## No. 16,014.

ECHAVE ET AL. *v*. CITY OF GRAND JUNCTION.
(193 P. [2d] 277)

Decided April 26, 1948.

Messrs. Moynihan-Hughes-Sherman, Mr. Amos L. Raso, for plaintiffs in error.

Mr. John C. Banks, for defendant in error.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

The city of Grand Junction, a municipal corporation, filed an action in the district court against Pedro Echave and Lugarda Echave to have buildings owned by them adjudged and decreed to be a public nuisance; that they be ordered vacated; that the use thereof be enjoined; and that the buildings be demolished. Upon trial to the court judgment was entered in favor of plaintiff and against defendants, to review which this writ of error.

We will refer to the parties herein as plaintiff and defendants as they appeared in the trial court.

In the complaint it is alleged that defendants are the owners of two lots located in the city of Grand Junction, upon which there is located a certain duplex frame residence, three one-room apartments, one frame house, one brick house, and two wooden sheds or cabins used for human habitation. It is further alleged that the habitations are in a filthy and unsanitary condition, with poor plumbing therein; that the buildings are improperly lighted, have inadequate ventilation and that, by reason of the fact that a great number of people are living in the limited quarters, contagious diseases are likely to originate and spread; that there is defective wiring and improper meter service; that the chimneys in the buildings are improperly constructed; that combustible material is allowed to accumulate; that there are insufficient exits in case of fire; that many minor children live in or in close proximity to the premises; that there is continuous fighting and quarreling, drunkenness, disturbances, liquor violations, prostitution, and

other criminal violations of various nature, and that the use of the premises induces the spread of veneral disease and contributes to juvenile delinquency.

It is further alleged that on November 12, 1946, the defendants, after receiving due notice thereof, attended a hearing before the city council of the city of Grand Junction upon complaint of the health, fire and police departments and the building, electrical and plumbing inspectors; that since said hearing nothing was done by defendants to improve the condition of the premises nor to alter or repair the buildings thereon. It is further alleged that the premises cannot be made sanitary and the buildings renovated and repaired "so as not to be the source of disease, immorality, fire hazards and unlawful acts; and that the use and occupancy of the said buildings causes a great financial expense to the plaintiff in its attempt to provide police, fire and health protection." Also it is set out in the complaint that "said buildings are unfit and unsafe for human habitation; that they are dangerous to persons and other property by reason of being a fire hazard; that they are dangerous to the public peace, health, morals and safety; that said buildings and the use and occupancy thereof constitute a public nuisance which should be abated."

The answer may be treated as a general denial, and in the so-called cross complaint it is alleged, "That the said hearing held on November 12, 1946, by the City Council was the first official hearing the defendants had regarding the said property," and "That the said City Council did not at the said hearing of November 12, 1946, or any time thereafter, order or instruct the defendants as to what specific improvements, alterations or changes should be made by the defendants regarding the afore-mentioned property."

It also is asserted in the cross complaint, "The said buildings are not so dilapidated that they cannot be repaired and remodeled so as to comply with the building code of the City of Grand Junction, Colorado," and that

"The defendants are ready, willing, and able to repair the said buildings so as to comply with the building code of the City of Grand Junction, Colorado." ·

The court found that some of the improvements are within, and some without, the fire limits of plaintiff and are in close proximity to a reputable hotel and other frame buildings in the business section of the city; that the buildings are in a deplorable and neglected condition; that they have faulty chimneys, defective electrical wiring requiring replacement at an excessive cost, and constitute a fire hazard. It further found that there was a faulty sewer connection; that garbage and other filth is deposited upon the premises, and that the buildings are, by reason of the unsanitary conditions there existing, unsuitable for human habitation and that they are a menace to the public health. Further, that a number of children live in the property and in the immediate vicinity thereof, and that the existing conditions under which these children live contributes to their delinquency; that a large number of undesirables visit and stay on the premises, and that all of these conditions constitute a serious law enforcement problem and a menace to the good order, health and economy of the community. Also, that the conditions described constitute a continuous public nuisance, and the repair of the premises or the closing of the buildings would not be an adequate or effective remedy, and that the removal thereof was necessary.                                    ✱

The court stated that various contagious diseases have existed upon the premises; and that syphilis is common among the persons inhabiting them and "That the premises have been operated and used for the lowest kind of a bawdy house; that intoxicating liquors have been sold and consumed upon the premises; and defendants themselves have participated in these unlawful acts."

The findings of the court to the effect that the premises have been operated and used for the lowest kind of a bawdy house; that intoxicating liquors have been sold

and consumed upon the premises; and that the defendants had participated in these unlawful acts are not based upon competent evidence. There was evidence that, about two years before this action was brought an unsanitary condition existed because of a tuberculosis patient residing there; that about one year before the action was brought there was filth arising because of a patient with dysentery; and that some months before, a patient who had some skin disease resided there, but, although the record reveals that the premises are located in a section of the city where prostitution at one time apparently was rife, there is no evidence of arrests, or any other evidence of such use of the premises for some considerable time previous to the bringing of this action, and the only arrests for liquor violations on the premises occurred in January, 1946, when defendants both pleaded guilty before a police magistrate and were fined accordingly. This evidence is too remote.

As we have stated, so far as the record reveals, the hearing before the city council on November 12, 1946, did not result in a finding that the properties were unsanitary, and there was no order whatever made for the correction of conditions in and about the premises.

The sanitary inspector of the city testified that only once in five years have defendants been ordered to appear in police court for violation of the garbage or other sanitary regulations of the city. The electrical inspector testified to defective wiring which could be repaired or replaced. The plumbing inspector testified that worn out and defective plumbing on the premises could be repaired or replaced; the building inspector testified that the buildings were fire hazards, but that these conditions could be remedied so as to make the structures unobjectionable, and in these statements, the chief of the fire department concurred. While there have been a great number of arrests in the one hundred block on Colorado avenue, during 1946 and part of 1947, in which

block these premises are situate, there is evidence of but one arrest from any of the buildings here involved.

Counsel for plaintiff states, "This action was not based upon any ordinance or statute but merely upon the general power of courts of equity to abate a public nuisance." The position taken by plaintiff's attorney obviates the necessity of referring to the ordinances of the city or state statutes. We are here concerned only with the authority of a court of equity to determine what is a public nuisance and what measures may lawfully be taken in its abatement.

██ It is said that, "A public nuisance is the doing of or failure to do something that injuriously affects the safety, health, or morals of the public, or works some substantial annoyance, inconvenience, or injury to the public." 39 Am. Jur., 285; 46 C. J. 646; 1 Wood on Nuisances (3d ed.) 34. We are not concerned here with a nuisance per se because, in order to be such, there must be an act, occupation or structure which is a nuisance at all times and under all circumstances regardless of location or surroundings. Here we have a situation in which the buildings upon the premises are not a nuisance per se, but may have become a nuisance in fact by reason of their unsanitary condition or lack of repair. The premises are not a nuisance per se, but they may have become a nuisance per accidens because of the filthy condition in which they are maintained. In other words, it cannot successfully be contended, if the buildings were in a proper state of repair and if the premises were in a sanitary condition, that because of their location or lawful use, the court would be authorized to order their removal; nor that if and when these changed conditions had taken place, the premises would not be fit for human habitation.

██ It is a general rule of law that in cases similar to the instant one, courts will never go further than is absolutely necessary to protect the rights of the public. If the premises here in question can be repaired and put

in a sanitary condition so as not to be a menace to the health of the public and a fire hazard, their removal should not be ordered. Here, it is the use of the premises that is objectionable, and courts are authorized to prohibit the use which creates the nuisance. It is only in cases where an absolute necessity exists that judicial tribunals are authorized to adopt the harsh, drastic and unusual method of correction by decreeing the destruction of the property.

■ Municipalities do not possess unrestricted power to abate nuisances; abatement is limited to the necessities of the case. Property may be ordered destroyed under certain conditions, but only if the nuisance cannot be abated in any other way. Here, cleaning and disinfecting will remove the unsanitary conditions, and properly repairing the buildings on the premises will entirely remove the fire hazard, excepting such as is inherent because of the material of which they are constructed. If lawlessness, such as the keeping of a bawdy house or using the premises for the sale of intoxicating liquors, exists, the relief should be limited to enjoining the use for such purposes. *Houston v. Walton,* 23 Colo. App. 282, 129 Pac. 263; *City of Denver v. Mullen,* 7 Colo. 345, 3 Pac. 693; *McMahon v. Telluride,* 79 Colo. 281, 244 Pac. 1017; Joyce on Nuisances, pp. 150, 504; 46 C. J. p. 793.

The evidence here is that the plumbing can be repaired and the unsanitary conditions remedied, thus removing the health hazard; also, that the buildings can be repaired and the fire hazard thus removed, except such as exists by reason of the structures themselves which were lawful, so far as the record shows, at the time of their construction. We have said that the evidence of arrests and lawlessness in the one hundred block on Colorado avenue is not sufficient cause to order the destruction of these premises because, as we have indicated, the record shows but one arrest from any of the structures here involved within the year, and the only evidence of violation of the liquor laws is that re-

lating to an occurrence approximately eighteen months before the trial, and there is no evidence of any arrest from the premises where the charge was prostitution. Assuming that there were liquor violations traceable to the premises or that prostitution was carried on therein, the injunctive relief to which plaintiff would be entitled, if any, would be the suppression of the use rather than the destruction of the property.

As hereinbefore stated, plaintiff does not seek relief under any ordinance or statute, and also it is to be noted that the record does not disclose any action of the city council declaring the premises here involved to be a nuisance. Furthermore, the record discloses no notice served upon defendants by any city official requiring repairs on the buildings or removal of those articles which allegedly make them and the premises unsanitary, and, so far as the record reveals, defendants have never been advised of the existence of any conditions thereon or therein which were objectionable to the city officials, nor were they given any opportunity whatever to remedy any such conditions. It should also be taken into consideration that defendants pleaded and testified that they are ready, willing and able to fully comply with any and all lawful orders of the city officials issued to make the premises habitable and sanitary, and to repair the buildings so as to remove all objections thereto as either fire or health hazards.

Defendants should have been afforded an opportunity and reasonable time within which to repair the buildings and remove the conditions which allegedly cause the premises to be unsanitary, and, without such opportunity being given, the court erred in adjudging and decreeing that the premises be vacated and the buildings destroyed.

Judgment reversed.