337 P.2d 377

Jessie W. ALBERT, Plaintiff-Respondent,

v.

**CITY OF MOUNTAIN HOME,**
*Defendant-Appellant,*

and

*Willis R. Carrie,* Defendant.

No. 8687.

Supreme Court of Idaho.

March 26, 1959.

Francis H. Hicks, Mountain Home, and Hawley & Hawley, Boise, for appellant.

Anderson, Kaufman & Anderson, Boise, for respondent.

, McQUADE, Justice.

This is an appeal from a judgment of $1,500 awarded as damages for destruction of a building. Mrs. Jessie Albert brought this action against the City of Mountain Home and Willis R. Carrie, mayor of Mountain Home at the time of the acts of which she complains. The plaintiff sought to recover the value of a residence which was torn down by the city as a nuisance in April, 1956.

Mrs. Albert first filed a claim against the city, and the claim was denied. She then brought this action. The trial court granted a nonsuit as to defendant Carrie, and only the action against the city is now before this Court.

The house in question was a frame structure, built around 1925, and containing a living room, bedroom, kitchen, pantry, bath, and two porches. The kitchen and a por-

tion of the bedroom had been part of another house; the front part, the bath and the porches were added to the original structure. It stood on a rock foundation. The chimney did not extend to the ground, but rested on a frame platform. From pictures admitted in evidence, the house appears otherwise to be of solid construction. It was last painted about 1927.

The structure had been unoccupied for a number of years prior to this action. Most of the furnishings had been removed, the windows were boarded, and weeds were permitted to grow in the yard.

Other houses in the neighborhood were of comparable age. To the north stood another frame house, approximately six feet from the Albert residence. There was a tourist park 75 to 80 feet to the south. Across the street and approximately 100 feet away was a gasoline storage tank.

Mrs. Albert testified the last time she visited the house, in the fall of 1955, the doors were locked, the roof was in good repair, and while the wallpaper was soiled, it was not torn. There was no indication anyone had been living there. The plaintiff's son, John, gave similar testimony.

Vern Everett, chief of the Mountain Home Volunteer Fire Department, testified he inspected the building in August, 1955. He said the back door was open and there was rubbish "ankle deep" in the interior. There was an old mattress in the living room, and on a box beside it he found partially-burned candles. He further testified the yard was filled with weeds and rubbish, there were shingles missing from the roof, the unpainted boards were feathering and would catch fire easily, and strips of wallpaper had been torn from the inside walls. The fire chief described the building as being "in a perilous condition" from the standpoint of fire danger. On cross-examination he testified in part as follows:

"Q. * * * As a matter of fact, the only thing that made the Albert house any different from any other house in the neighborhood, was the fact there was some rubbish around it. Is that correct? A. Unkempt, unkept, and filthy.

"Q. It was the rubbish around it?

A. Very definitely.

"Q. The rubbish should have been cleaned up, should it? A. Surely.

"Q. That would have removed much of the fire hazard? A. It surely would.

"Q. How long would it have taken to remove the rubbish?

*     *     *     *     *     *

"A. Probably half a day.

"Q. The walls in the building could have been painted, could they not?

A. Yes, they could have."

Everett further testified the roof could have been repaired, and as far as he could tell the framework of the house was solid.

Two other members of the volunteer fire department testified they had made similar inspections. In addition to the debris described by the fire chief, both testified there were cigaret butts scattered in the house. These witnesses estimated the place could have been cleaned up in half a day.

A police officer testified he removed transients from the building on three different occasions. A neighbor testified she could hear persons in the house night after night, and on one occasion two men came out intoxicated and smoking cigarets.

The fire department, on September 29, 1955, requested the city to condemn the house as a fire and structural hazard. Pursuant to this request, the city council on October 3, 1955, declared the property "a public nuisance and hazard to health and safety."

The parties stipulated the city attorney mailed a letter to Mrs. Albert at her home address of Bruneau, Idaho, January 16, 1956, notifying her the building would be demolished within 10 days if it were not made free from fire hazard. Mrs. Albert testified she did not receive the letter, and did not know of the city's action until her son visited the premises in the spring of 1956 and found a workman tearing the house down.

Mrs. Albert testified the value of the house was between $2,500 and $2,700. A real estate broker stated the building had a value, but he did not know how much. A real estate agent testifying for the city said the building had a minus value—i. e., the lot was worth more without the house than with it.

The jury awarded Mrs. Albert damages of $1,500 against the City of Mountain Home. This appeal is from judgment on the verdict and from denial of a motion for new trial.

The principal specifications of error are these:

1. Excessive damages, awarded under the influence of passion or prejudice, and not based upon competent evidence.

2. Refusal of the trial court to permit a contractor called by the defendant to testify as to his opinion of the value of the building.

3. Instructions of the trial court to the effect the city would be liable if it failed to give the plaintiff reasonable notice and opportunity to correct the condition of the building.

4. The trial court's refusal to give instructions requested by the defendant that if the house were in such condition as to be a nuisance the plaintiff could not recover, and further that there was a presumption of validity of the action of the city.

The statute under which the city acted is I.C. sec. 50–601:

"All cities of the second class and villages in the state of Idaho shall have power to declare any building or structure to be a nuisance which, in the opinion of the city council or board of trustees, is so dilapidated or is in such condition so as to menace the public health or the safety of persons or property on account of increased fire hazard or otherwise; and any such governing board may cause the destruction or removal of any such building or structure at the expense of the person or persons, associations, corporations, or co-partnerships holding, owning or maintaining the same, and to levy a special assessment on the land or premises whereon the nuisance is situated to defray the cost or to reimburse the city or village for the cost of destruction or removal of said building or structure so declared to be a nuisance."

To be lawfully destroyed as a nuisance, a building must be a nuisance per se or in fact. If it is neither, it cannot be made a nuisance by declaration of the city council. Porter v. City of Lewiston, 41 Idaho 324, 238 P. 1014, appeal dismissed 270 U.S. 671, 46 S.Ct. 470, 70 L.Ed. 791; State v. Finney, 65 Idaho 630, 150 P.2d 130; 14 A.L.R.2d annotation, Constitu-

tional rights of owner as against destruction of building by public authorities, at p. 82.

Where the city orders a building summarily destroyed which is not a nuisance per se, it does so at its peril, and if it is found the structure was not in fact a nuisance, the owner may recover damages. Porter v. City of Lewiston, supra; McMahon v. City of Telluride, 79 Colo. 281, 244 P. 1017, 46 A.L.R. 358.

Witnesses for both parties agreed the house was in need of paint. There is a conflict in the evidence as to the state of disrepair and the presence of rubbish in the interior, as to whether the place was locked, and whether it showed evidence of being occupied by transients. Defendant's witnesses testified the fire hazard could have been substantially removed by painting the house and cleaning out the accumulated debris.

These conflicts in the testimony were for the jury to resolve; but even taking the view most favorable to the appellant —that the building was littered with debris, and that transients living there and using candles and cigarets created a fire hazard —these conditions were caused by the *use* to which the house was put, and were not hazards inherent in the building itself. Where a hazardous condition may be remedied by cleaning and repairs, without

major reconstruction, the building may not be destroyed as a nuisance.

" * * * Municipalities do not possess unrestricted power to abate nuisances; abatement is limited to the necessities of the case. Property may be ordered destroyed under certain conditions, but only if the nuisance cannot be abated in any other way. Here, cleaning and disinfecting will remove the unsanitary conditions, and properly repairing the buildings on the premises will entirely remove the fire hazard, excepting such as is inherent because of the material of which they are constructed. * * *" Echave v. City of Grand Junction, 118 Colo. 165, 193 P.2d 277, 280. See also 9 Am.Jur., Buildings, sec. 40, pp. 44–45 (supplement); 14 A.L.R.2d annotation, supra, at pp. 92–97.

■ Because the nuisance could be abated by cleaning and painting, the city went beyond its authority in ordering the building destroyed. The defendant acted at its peril, and having done so it must respond in damages.

■ The city cites as error three instructions given by the trial court to the effect that if the building was in fact a nuisance the city had the burden of showing it gave the property owner reasonable notice and opportunity to repair or remove the structure; and if the city failed to give such notice and provide such opportunity before destroying the building, it was liable for damages.

Appellant cites the case of Porter v. City of Lewiston, 41 Idaho 324, 238 P. 1014, appeal dismissed 270 U.S. 671, 46 S.Ct. 470, 70 L.Ed. 791, for the proposition that the city may destroy a nuisance without notice and hearing, and the right of judicial review will provide the owner due process. While there is language in the case which may be interpreted as leading to this conclusion—and which has been so interpreted by the author of the syllabus—in the Porter case notice was actually given and a hearing conducted. See 41 Idaho at page 330, 238 P. at page 1015; 14 A.L.R.2d at p. 89.

The Albert structure was not shown to be a nuisance per se, and notice permitting its rehabilitation was not afforded.

The general rule is stated thus in Rhyne, Municipal Law, 1957, p. 559:

"Except in clear cases of emergency, a prior notice and a reasonable opportunity to be heard is required to be given to a property owner before attributing legal effectiveness to any order to demolish, repair, alter or improve a substandard building. The owner should also be apprised of the defects in his building to give him an opportunity to remedy them. * * *" See also 14 A.L.R.2d annotation, supra,

p. 74 ff.; 16A C.J.S. Constitutional Law § 645, p. 913.

The instructions objected to were a correct statement of the law, and do not conflict with the ruling in Porter v. City of Lewiston, supra.

■ Taking all of the testimony together, we do not find the damages excessive nor unsupported by competent evidence.

■ The appellant cites as error the trial court's refusal to permit the witness Cliff Johnson, a Mountain Home building contractor, to testify as to the value of the property. The witness had been engaged in building and selling houses since 1935; he lived 300 feet from the Albert property, and had been in the house while it was being torn down. He testified he was "fairly well" acquainted with real estate values in Mountain Home, that he was not an expert "with real estate values" but was better acquainted with the value of houses. Objection on the ground of want of qualification was sustained to the following question:

"Q. Now, Mr. Johnson, do you have an opinion as to the fair market value of that house and the lots taken together?"

The witness was qualified to testify as to the value of the house, and that was the material issue. Counsel for the appellant did not seek to qualify the witness further, nor to limit his question to the value of the house. Under these circumstances, it was not error to sustain an objection to the question.

The instructions given by the court and cited as error by the appellant are correct statements of the law as to reasonable notice and opportunity to repair.

■ Defendant's requested instruction no. 1, to the effect that if the premises were a nuisance the plaintiff could not recover, is too broad in that it does not take into account the possibility of eliminating the nuisance without destruction of the building.

■ Requested instruction no. 3 was to the effect there was a presumption of validity of the city's act. This was not a correct instruction under the facts in the case, the house not being a nuisance per se and there being a conflict as to whether it was a nuisance in fact, and consequently a question as to whether the city acted lawfully.

The judgment of the trial court is affirmed.

Costs to respondent.

PORTER, C. J., and TAYLOR, SMITH, and KNUDSON, JJ., concur.