**Anne E. MILES, Plaintiff,**

v.

**DISTRICT OF COLUMBIA, and John A. Taylor, t/a Southeast Wrecking Company, Defendants.**

**Civ. A. No. 901–71.**

United States District Court, District of Columbia.

Jan. 26, 1973.

J. Hampton Baumgartner, Jr., Bruce S. Mencher, Washington, D. C., for plaintiff.

Madison McCulloch, Asst. Corp. Counsel for District of Columbia, Washington, D. C., for defendant.

Paul J. Sedgwick, Washington, D. C., for John A. Taylor.

## MEMORANDUM–ORDER

GASCH, District Judge.

This matter came on for consideration on cross-motions for summary judgment by the plaintiff and the defendants District of Columbia and John A. Taylor, t/a Southeast Wrecking Company. Plaintiff originally filed the complaint for money damages alleging that the actions of the defendants in razing her buildings at 1368 and 1370 Kenyon Street were unlawful and constituted a taking of her property without just compensation and without due process of law. The agreed statement of facts discloses that on November 5, 1963, the District of Columbia Board for the Condemnation of Insanitary Buildings, pursuant to D.C.Code § 5–616 et seq., issued an order of condemnation requiring the premises to be put in a sanitary condition or to be demolished and removed. Thereafter, the plaintiff obtained several extensions of time from the Board to make the necessary repairs to the premises. In 1964 the plaintiff secured a loan of approximately $30,000.00 from the Perpetual Building Association for the purpose of making improvements in the buildings. At least $25,000.00 was spent in converting the two four-story dwellings into sixteen apartment units. However, the Board apparently became increasingly dissatisfied with the progress and the extent of the work done and on June 5, 1969, the Board held a meeting where it was determined that the buildings should be processed for demolition. In addition, the Board directed that the plaintiff be advised that the buildings were to be razed. However, at no time after June 5, 1969, did the Board give plaintiff registered or certified mail notice of its determination to demolish her premises. Furthermore, the Board concedes that it never obtained an estimate of how much it would

cost to complete the repairs deemed necessary to remedy the insanitary conditions. On October 1, 1969, the defendant District of Columbia awarded a demolition contract to defendant Southeast Wrecking Company. After securing the requisite permits from the District of Columbia, the wrecking company commenced razing the plaintiff's buildings and today only the land remains.

The plaintiff contends that the Board for the Condemnation of Insanitary Buildings failed to give her the registered or certified mail notice required under D.C.Code § 5–625 of its intention to destroy her buildings due to the conditions that existed in June, 1969. The plaintiff further argues that the Board's actions, including its decision to have the buildings demolished as opposed to completing the repairs and levying the costs of those improvements as a tax against the property pursuant to D.C. Code § 5–622, were unlawful and in violation of the plaintiff's constitutional rights. Finally, in the supplemental memorandum in support of her motion for summary judgment, the plaintiff asserts that the Board's failure to provide her with the opportunity to be heard on the question whether the repairs should be completed or the property demolished constituted an unconstitutional deprivation of property rights and a denial of due process. For the reasons stated herein, the Court concludes that the plaintiff was not afforded the fundamental safeguards of due process of law and, therefore, she is entitled to summary judgment.

Under its general police power, a local government may prevent an owner of property from allowing it to remain in a condition that harms, or threatens to harm, the public interest. This governmental power includes the authority to destroy private property if such destruction is reasonably necessary to protect the public health and safety. Although each person holds his property subject to this power, the actual existence of a public nuisance is an absolute condition precedent to the exercise of

the power. This proposition has been well stated in the following opinion:

The common council undoubtedly has the power to abate nuisances, and a dilapidated and vacant building, by reason of fire, and its temporary occupation by disorderly persons and trespassers, and its use as a receptacle of filth, may become a common nuisance as recognized by law. But unless a nuisance, as defined by the common law or by statute, exists, the act of the common council cannot make it one by a mere resolution. Such a doctrine might place the property of the people, no matter what in fact might be its real condition and character, at the disposal of the common council, without compensation.

Hennessy v. St. Paul, 37 F. 565 (C.C. Minn.1889).

In the instant case, the record indicates that in the Summer of 1963 the Board for the Condemnation of Insanitary Buildings sent to the plaintiff a notice to show cause why her premises should not be condemned. In accordance with D.C.Code § 5–618, the plaintiff apparently requested and received a hearing regarding the proposed condemnation. Following that hearing, the Board issued a condemnation order in September, 1963, requiring the plaintiff to make such changes and repairs as would remedy the insanitary conditions or to cause her buildings to be demolished and removed within approximately six months. The plaintiff could have appealed this order to the Condemnation Review Board,[1] and sought further review before the Superior Court of the District of Columbia.[2] Judgments of the Superior Court are, of course, reviewable by the District of Columbia Court of Appeals and ultimately by the Supreme Court of the United States. At this point in time, it cannot seriously be contended that the plaintiff was de-nied an opportunity to present her position on the question whether the buildings at the time demolition was ordered were in fact a public nuisance. In 1963, the plaintiff chose not to avail herself of the review procedures, but instead decided to secure a $30,000.00 loan and expend almost the entire amount in a good faith effort to bring her buildings into compliance with the law. Due to sporadic vandalism, construction delays, and other causes, the repair process continued for six years until June, 1969, when the chairman and three members of the Board reviewed the case and made an ex parte determination that the buildings be demolished. Under these circumstances, the critical issue is whether due process of law required the defendant Board to accord the plaintiff a hearing in 1969 before making the final decision that the premises either be repaired or demolished.

■ Any consideration of what procedures due process may require under a certain set of circumstances necessarily begins with an examination of the nature and importance of the government function involved as well as the individual rights that have been affected by governmental action. Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970); Cafeteria & Restaurant Workers Union v. McElroy, 367 U. S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). *See also* Hannah v. Larche, 363 U.S. 420, 440, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). It should be emphasized at the outset that the present litigation is not analogous to those emergency situations where summary action by a government agency is justified.[3] The subject buildings were not lying in the path of a raging fire, nor were they destroyed to prevent the spread of a contagious disease. On the contrary, the Board apparently felt there was no urgent need for immediate

---

1. D.C.Code § 5–628.

2. D.C.Code § 5–629 (Supp. V. 1972).

3. See Wolpe v. D. C., District Court for the District of Columbia, Civil Action No. 1438–69 (April 24, 1972), wherein the Court sustained the action of the city in demolishing a building rendered unsafe and dangerous as a result of fires following the riots of April, 1968.

destruction to protect the public interest, since they allowed several years to elapse before ordering demolition. Thus, this case deals with the general power of local authorities to order the demolition of a building without compensation for the purpose of safeguarding the health and safety of the community as against the constitutional rights of the owner. In the absence of exigent circumstances, the government must adhere closely to the demands of rudimentary due process before it can effectuate the condemnation and destruction of a person's property.

▪ It is a well settled principle of law that the basic requisite of due process is that an "individual be given an opportunity for a hearing before he is deprived of any significant property interest." [4] *See* Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L. Ed.2d 349 (1969); Opp Cotton Mills v. Administrator, 312 U.S. 126, 152–153, 61 S.Ct. 524, 85 L.Ed. 624 (1941); United States v. Illinois Central R. Co., 291 U.S. 457, 463, 54 S.Ct. 471, 78 L.Ed. 909 (1938). The Supreme Court has specifically interpreted the Constitution to require "an opportunity which must be granted at a *meaningful time* and in a meaningful manner," Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965) (emphasis added), "for hearing appropriate to the nature of the case," Mullane v. Central Hanover Tr. Co., 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). See also Bell v. Burson, 402 U.S. 535, 541–542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Goldberg v. Kelly, 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). *Cf.* Blackwell College of Business v. Attorney General, 454 F.2d 928 (D.C.Cir. 1971). The controlling criteria of the Due Process Clause is whether the local government has afforded the individual a "meaningful" opportunity to be heard. In the instant case, the District of Columbia has argued that the plaintiff requested and received a hearing in 1963 and that this hearing satisfied the mandate of the Fourteenth Amendment. The Court is unable to agree that the hearing conducted before the Board in 1963 constituted an opportunity to be heard at a time and in a manner that was meaningful and relevant to the question raised in this suit. Clearly, the passage of six years, the expenditure of substantial sums of money, and the change in conditions almost entirely negated the significance of procedures followed at the very beginning of this case. It is important to note that the plaintiff was originally informed of the proposed condemnation in June, 1963, and that after a hearing, the Board issued a condemnation order in September, 1963. In an effort to rectify the insanitary condition of her property, the plaintiff retained the services of an architect and several contractors and expended at least $25,000.00 over a six-year period. Despite repeated vandalism and customary delays in construction work, the plaintiff demonstrated a constant desire to improve her buildings by converting them into sixteen apartment units. The Board, however, remained dissatisfied with the condition of the premises, and in June, 1969, held an ex parte meeting behind closed doors where it was determined that the buildings be processed for demolition. Unfortunately, at this juncture the Board did not deem it necessary to provide the plaintiff with an opportunity to explain her position that the repairs should be continued rather than have her buildings razed. After six long years and the investment of at least $25,000.00, the substantial change in the character of the property certainly warranted the allocation of a short period of the Board's time whereby the plaintiff could have had the opportunity to present evidence to support her proposition that the repairs be completed. Under these circumstances, the failure of

---

4. Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971).

the Board to provide for a hearing at a meaningful time and in a meaningful manner constituted a deprivation of the plaintiff's property and a denial of her right to repair in violation of due process of law.

Apart from the constitutional requirement of an appropriate and timely hearing, the property rights of an owner of a building protect him from its demolition wherever its demolition is not reasonably necessary to eliminate its insanitary condition. Admittedly, if the structure is in such a state of disrepair or so insanitary as to be unfit for human habitation, or is detrimental to the public safety or welfare, and the problems cannot be corrected at a reasonable expense considering the value of the premises when improved, the local agency may compel the owner to elect whether to repair or destroy the building. Indeed, if the owner refuses to act, the government may destroy the building without compensation, but only when this procedure is reasonably necessary to protect an overriding public interest. The apparent conflict between the right of the owner to repair his property and the interests of the public in removing the building can only be resolved after a careful consideration of all the facts by the decisionmaker. Unfortunately, it is not known upon which facts or legal rules the Board relied in deciding to raze the buildings. The Board's failure to hold a hearing, weigh the contemporaneous evidence, and issue a statement of reasons seriously impugns the validity of its conclusion that the unlawful conditions were best remedied by demolition.

In another case which shares a similar set of facts, City of Aurora v. Meyer, 38 Ill.2d 131, 230 N.E.2d 200 (1967), a municipality obtained a court order permitting the destruction of a building on the grounds that it was in a dangerous and unsafe condition. The owner appealed the order and the Supreme Court of Illinois held, *inter alia,* that a fair implication from the statutory language re-

quired an affirmative finding that the structure was beyond reasonable repair before authorizing demolition. The reviewing court remarked that a brief order simply concluding that a building is in an unsafe condition does not justify its removal. The Court further stated:

The law is well settled that in cases of this nature courts do not go further than is necessary to protect the public interest. Property may be ordered destroyed under certain conditions but only if the danger cannot be abated in any other way. It is only in cases where an absolute necessity exists that courts adopt the drastic method of correction by ordering destruction of the property. (Childs v. Anderson, 344 Mich. 90, 73 N.W.2d 280; Echave v. City of Grand Junction, 118 Colo. 165, 193 P.2d 277.) In other words the remedy is limited to the necessities of the case. Where hazardous conditions may be remedied by repair without major reconstruction the building may not be destroyed. Albert v. City of Mountain Home, 81 Idaho 74, 337 P.2d 377.

Although not expressed in so many words, the plain implication of the act involved here is that if the property can be repaired with comparatively little expense the city ought to adopt this course rather than complete demolition, that only in cases where the structure is substantially beyond repair is an order for demolition contemplated. There are many kinds of deficiencies which would render a building dangerous and unsafe, but which can readily be obviated by appropriate repairs. Inadequate wiring, or a weakened supporting beam as in the case at bar, even if serious enough to sustain a finding that the structure is dangerous and unsafe, would not in many cases warrant complete destruction. The cost of repairs may well be a small fraction of the building's value. The court should find from the evidence what the specific defects are

which render the building dangerous and unsafe.[5]

Although the *Aurora* case involved a somewhat different procedure which required the city to petition a court for an initial decision on the facts, this distinction does not impair the applicability of the court's rationale. Similar to the statutory language in *Aurora,* the relevant D.C.Code sections provide that insanitary or unsafe buildings may be subject to an order of repair or demolition. A fair interpretation of the D.C. Code contemplates repair where feasible and demolition only where the state of deterioration is such that repair or continued repairs would amount to a substantial reconstruction of the building. However, the record in the case at bar is devoid of any findings of fact or statement of reasons which would support the Board's ex parte decision to demolish rather than follow the preferred alternative of repairing the building. This cursory treatment of a critical question seems to be violative of the Supreme Court's general directive on decisionmaking in Goldberg v. Kelly, 397 U. S. 254, 271, 90 S.Ct. 1011, 1022, 25 L. Ed.2d 287 (1970), which reads in part:

> Finally, the decisionmaker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing. Ohio Bell Tel. Co. v. PUC, 301 U.S. 292 [57 S.Ct. 724, 81 L.Ed. 1093] (1937); United States v. Abilene & S. R. Co., 265 U.S. 274, 288–289 [44 S.Ct. 565, 569–570, 68 L.Ed. 1016] (1924). To demonstrate compliance with this elementary requirement, the decisionmaker should state the reasons for his determination and indicate the evidence he relied on, *cf.* Wichita R. & Light Co. v. PUC, 260 U.S. 48, 57–59 [43 S.Ct. 51, 54–55, 67 L.Ed. 124] (1922), though his statement need not amount to a full opinion or even formal findings of fact and conclusions of law. And, of course, an impartial decisionmaker is essential. *Cf.* In re

Murchison, 349 U.S. 133 [75 S.Ct. 623, 99 L.Ed. 942] (1955); Wong Yang Sung v. McGrath, 339 U.S. 33, 45–46 [70 S.Ct. 445, 451–452, 94 L. Ed. 616] (1950).

The Court recognizes that local governments have an interest in the economic and expeditious resolution of questions involving the disposition of insanitary buildings. Nevertheless, where governmental action seriously injures an individual or compromises his property rights, and the reasonableness of the action depends on fact findings, due process of law requires no less than a timely hearing, the weighing of evidence and at least a brief summary of the facts and rationale which sustain the final administrative decision. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1743, 6 L.Ed.2d 1230 (1970); *cf.* Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959).

The plaintiff has also raised serious questions as to whether the Board complied with constitutional requisites for notice to the plaintiff in this case. In the agreed statement of facts, the Board for the Condemnation of Insanitary Buildings admits that after June 5, 1969, it did not give the plaintiff registered or certified mail notice of its determination to demolish her buildings. Apparently, the Board sent notice of its proposed action by certified mail to the plaintiff's purported attorney. However, the attorney notified the Board that he was not the agent for purposes of receiving any notices concerning the subject property. The newspaper advertisements with reference to action about to be taken by the Board after June 5, 1969, merely identified the property by street address and lot and square numbers but did not identify the plaintiff by name. Based upon these facts, the plaintiff contends that the failure of the Board to send registered or certified mail notice of its intention to destroy her buildings violated her right to due process of law. A proper evaluation of

---

5. City of Aurora v. Meyer, 38 Ill.2d 131, 230 N.E.2d 200, 203–204 (1967).

this contention requires an examination of authorities dealing with the manner and sufficiency of notice.

The prevailing rule concerning the constitutional adequacy of notice has been well stated in the landmark case of Mullane v. Central Hanover Bank & Trust, 339 U.S. 306, 70 S.Ct. 652, 94 L. Ed. 865 (1950):

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

> The notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.

> But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than the other feasible and customary substitutes. (citations omitted)

339 U.S. at 314, 70 S.Ct. at 657.

■■■ The general principle that notice must be reasonably designed to inform the parties of action which may adversely affect their legally protected interests has been applied to notice in condemnation proceedings. Schroeder v. New York, 371 U.S. 208, 88 S.Ct. 279, 9 L.Ed.2d 255 (1962); Walker v. Hutchin-son, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956). In both these cases the Court noted that it is impossible to establish a rigid formula as to the type of notice that must be given pursuant to the Due Process Clause. However, it is now well settled that newspaper publication is not adequate service of notice upon a resident property owner in condemnation cases where there is no reasonable explanation why personal notice cannot be delivered. In expressing the unanimous opinion of the Supreme Court in Schroeder, supra, Mr. Justice Stewart emphasized that notice by publication does not satisfy due process with respect to an individual whose name and address are known or easily ascertainable. See also Walker v. Hutchinson, 352 U.S. 112, 115–116, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956); Russo v. Erlwein, 53 Misc.2d 697, 279 N.Y.S.2d 464 (1967). Furthermore, it is common knowledge that a newspaper advertisement seldom informs a property holder of the pendency of action against his property. See Walker v. Hutchinson, 352 U.S. 112, 116, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956); District of Columbia v. $1,191.99 in United States Currency, Sup.Ct.D.C.Civil No. GS 8340–70, August 31, 1970, in Wash.L.Rep., Vol. 99, Number 195, page 1765, October 7, 1971. The inadequacies of notice by publication were described by the Mullane court in words that deserve repeating here.

> Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper. * * * The chance of actual notice is further reduced when as here the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention.

Mullane v. Central Hanover Bank & Trust, 339 U.S. 306, at 315, 70 S.Ct. 652 at 658.

■■■ In the case at bar, the publication of the Board's notice that appeared in the newspaper in July, 1969, was virtually meaningless because it did not

mention the plaintiff by name but only listed the properties by address in a group notice which included other properties. When this method of "notice" by publication is viewed in the light of the size of the type in the newspaper itself, it cannot be considered "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Milliken v. Meyer, 311 U.S. 457 [61 S.Ct. 339, 85 L.Ed. 278]; Grannis v. Ordean, 234 U.S. 385 [34 S.Ct. 779, 58 L.Ed. 1363]; Priest v. Board of Trustees of Town of Las Vegas, 232 U.S. 604 [34 S.Ct. 443, 58 L.Ed. 751]; Roller v. Holly, 176 U.S. 398 [20 S.Ct. 410, 44 L.Ed. 520]." Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L.Ed. 865 (1950); Schroeder v. New York, 371 U.S. 208, 211, 88 S.Ct. 279, 9 L.Ed.2d 255 (1962).

Since the forms of merely constructive service upon known resident property owners does not constitute sufficient notice within the mandate of due process, the question remains as to what modes of service would be appropriate in this case. Of course, it is undisputed that direct, personal service on the property owner is clearly the most desirable way of notifying an interested party. Furthermore, service by registered or certified mail is also generally considered to be a permissible mode. However, in the instant case the defendant Board argues that notice of the decision to demolish the buildings was sent to the plaintiff by *regular* mail, and that this method of service was adequate to advise the plaintiff of its determination to raze her buildings. After reviewing the pertinent D.C.Code provisions and other court opinions that have dealt with the difficult area of the due process requirements of notice, this Court is unable to agree with the Board's contention.

Pursuant to D.C.Code § 5–625, the Board must forward notice required under the statute by *registered or certified mail*, and may only resort to

newspaper publication if the registered mail notice is returned for reasons other than refusal. Other methods of service are allowed under the applicable D.C. Code section, however, regular mail notice alone is not recognized as satisfying the statutory requirements. This Court can discern no persuasive reason in this case for approving a mode of service that is less effective than that directed by the D.C.Code in those situations where a property owner is sent notice compelling him to show cause why his building should not be condemned. When the Board entrusted the notice of its determination to demolish the subject buildings to the safekeeping of the normal channels of the postal service, it selected a less adequate method than that specified by the Code, and it also failed to comport with basic constitutional prerequisites. It should be remembered that this case has lasted over six years with numerous contacts between the plaintiff and the defendant Board. Since the original service six years ago on which the defendant relies, the plaintiff has expended a substantial sum of money and the condition of the buildings has materially changed. Under these circumstances due process of law requires no less than registered or certified mail notice as the type of feasible notice reasonably designed to inform the plaintiff of the Board's final decision to demolish and afford her the opportunity to register her objections. *See* Schroeder v. New York, 371 U.S. 208, 211, 88 S.Ct. 279, 9 L.Ed.2d 255 (1962). Based upon the peculiar facts of this case, the Court concludes that the plaintiff was not afforded due process of law and, therefore, she is entitled to just compensation for the loss of her property. A hearing will be scheduled shortly on the issue of damages.

Wherefore, it is by the Court this 26th day of January, 1973,

Ordered that the motion of the defendant District of Columbia for summary judgment be and the same is hereby denied; and it is further

Ordered that the cross-motion of defendant John A. Taylor for summary judgment be and the same is hereby granted; and it is further

Ordered that the plaintiff's cross-motion for summary judgment be and the same is hereby granted.