DONLEY, Appellant, v. BOETTCHER, and another, Respondent.

*No. 75-399. Submitted on briefs March 30, 1977.—*
*Decided July 1, 1977.*
(Also reported in 255 N. W. 2d 517.)

For the appellant the cause was submitted on the brief of *Doar, Drill, Norman & Bakke* of New Richmond.

For the respondents the cause was submitted on the brief of *Solberg, Steans & Joyce* of Menomonie.

ABRAHAMSON, J.  This action was brought pursuant to sec. 66.05, Stats., to condemn for human habitation, occupancy or use, a vacant building owned by Willis Donley, Sr., located in the city of Menomonie.

On November 9, 1973, Eugene R. Boettcher, as building inspector for the city of Menomonie, sent a letter and order to Donley declaring the building a public nuisance under sec. 66.05 (8) (d), Stats.,[1] because it was ". . . so

---

[1] Sec. 66.05 (8) (d), Stats., provides:

"Any building, which under par. (a) either as a result of vandalism or for any other reason is permitted to deteriorate or become dilapidated or blighted to the extent where windows, doors or other openings or plumbing or heating fixtures or facilities or appurtenances of such building, dwelling or structure are either damaged, destroyed or removed to that such building, dwelling or structure offends the aesthetic character of the immediate neighborhood and produces blight or deterioration by reason of such condition, is a public nuisance."

dilapidated and had become so out of repair that it was dangerous, unsafe and otherwise unfit for human habitation, occupancy or use." Furthermore, the building inspector determined that the cost to repair the building would exceed 50% of the value of the structure as determined by the statutory formula of sec. 66.05(1)(b), Stats.[2] Accordingly, Donley was instructed to raze the building within 60 days or the building inspector would act pursuant to sec. 66.05(2)(a), Stats.,[3] to have the

[2] Sec. 66.05(1)(b), Stats., provides:

"Whenever a municipal governing body, inspector of buildings or designated officer determines that the cost of such repairs would exceed 50 per cent of the assessed value of such building divided by the ratio of the assessed value to the recommended value as last published by the state supervisor of assessments for the municipality within which such building is located, such repairs shall be presumed unreasonable and it shall be presumed for the purposes of this section that such building is a public nuisance."

[3] Sec. 66.05(2)(a), Stats., provides:

"If the owner fails or refuses to comply within the time prescribed, the inspector of buildings or other designated officer shall cause such building or part thereof to be razed and removed either through any available public agency or by contract or arrangement with private persons, or closed if unfit for human habitation, occupancy or use. The cost of such razing and removal or closing shall be charged against the real estate upon which such building is located and shall be a lien upon such real estate, and shall be assessed and collected as a special tax. When any building has been ordered razed and removed the governing body or other designated officer under said contract or arrangement aforesaid may sell the salvage and valuable materials at the highest price obtainable. The net proceeds of such sale, after deducting the expenses of such razing and removal, shall be promptly remitted to the circuit court with a report of such sale or transaction, including the items of expense and the amounts deducted, for the use of the person who may be entitled thereto, subject to the order of the court. If there remains no surplus to be turned over to the court, the report shall so state. If the building or part thereof is insanitary and unfit for human habitation, occupancy or use, and is not in danger of structural

building razed and removed with the cost of such action to be charged against the real estate.

Donley thereafter commenced proceedings in the circuit court pursuant to sec. 66.05(3), Stats.,[4] to obtain a temporary restraining order prohibiting the city from taking any action with respect to the building until the circuit court could determine the reasonableness of the building inspector's order. The court issued a temporary restraining order on January 16, 1974, and on January 22, 1975, a hearing was held on the reasonableness of the raze order. Although initially there was some question at this hearing as to which statute the city was relying

collapse the building inspector shall post a placard on the premises containing the following words: 'This Building Cannot Be Used for Human Habitation, Occupancy or Use.' And it is the duty of the building inspector or other designated officer to prohibit the use of the building for human habitation, occupancy or use until the necessary repairs have been made."

[4] Sec. 66.05(3), Stats., provides:

"Anyone affected by any such order shall within 30 days after service of such order apply to the circuit court for an order restraining the inspector of buildings or other designated officer from razing and removing such building or part thereof or forever be barred. Hearing shall be had within 20 days and shall be given precedence over other matters on the court's calendar. The court shall determine whether the order of the inspector of buildings is reasonable, and if found reasonable the court shall dissolve the restraining order, and if found not reasonable the court shall continue the restraining order or modify it as the circumstances require. Costs shall be in the discretion of the court. If the court finds that the order of the inspector of buildings is unreasonable, the inspector of buildings or other designated officer shall issue no other order pursuant to the authority of this section in regard to the same building or part thereof until its condition is substantially changed. The remedies herein provided shall be exclusive remedies and anyone affected by such an order of the inspector shall not be entitled to recover any damages for the razing and removal of any such building."

upon, the trial court finally ruled the matter was proceeding pursuant to sec. 66.05(1)(a), Stats.[5]

[5] Sec. 66.05(1)(a), Stats, provides in pertinent part:

"*Razing buildings; excavations.* (1)(a) The governing body or the inspector of buildings or other designated officer in every municipality, . . . may order the owner of premises upon which is located any building . . . which in its judgment is so old, dilapidated or has become so out of repair as to be dangerous, unsafe, insanitary or otherwise unfit for human habitation, occupancy or use, and so that it would be unreasonable to repair the same, to raze and remove such building or part thereof, or if it can be made safe by repairs to repair and make safe and sanitary or to raze and remove at the owner's option; . . . The order shall specify a time in which the owner shall comply therewith and specify repairs, if any . . ."

Any doubt as to which subsection of the statutes, either 66.05 (1) or (8), the action was brought under was dispelled in the following colloquy involving the trial court, city attorney and defendant's attorney at the hearing:

"The Court: I have felt until now that you were proceeding under 66.05(1)(a) and now I see that you are proceeding under 66.05(8)(d), is that correct?

". . .

"Mr. Joyce [City Attorney]: Well, it's my understanding, your Honor, that we are proceeding under 66.05(1)(b) where the assessor may make a determination that the cost of repairs exceed 50 per cent of the assessed value. . . . Our authority to issue the order is 66.05(1)(b).

"Mr. De Witt [Defense Attorney]: Yes, but he is proceeding under (8)(d). That's the basis upon which he's declaring the public nuisance, your Honor, and the 66.05(1)(b) is involved only with respect to the reasonableness of the cost of repair.

"The Court: Well, as I read the statute 66.05(1)(b) applies to 66.05(1)(a). It does not appear to me as I read this statute here today that it applies to (8)(d). Now I'm willing to be corrected on that. It's true if it offends the aesthetic character of the neighborhood it is presumed to be a public nuisance but I just don't see where the municipality if it is a (8)(d) proposition has the authority to require it to be razed. . . .

"Mr. Joyce: Okay, your Honor, even though the second paragraph of this letter of November 9th does state that in the opinion

The testimony presented at the hearing established that the structure referred to as the "Donley Building" is located in the city of Menomonie on the bank of a lake which is adjacent to the downtown area. The two-story structure is over 100 years old. The exterior on three sides is covered with Permastone and the back of the building is covered with tarpaper. It is isolated with the next closest building being several blocks away. Until 1969, Donley and his daughter and son-in-law used the first and second floors of the building as law offices. Also located in the building was a barbershop which moved out in 1971, after which Donley had the plumbing and heating systems in the building shut off. He also had

of the supervisor of inspections this is a public nuisance under (8)(d) I think that he has still exercised his proper prerogative to condemn this building under (1)(b). . . . Now I don't think that the letter is invalid here merely because there's a definition of public nuisance under (8)(d) in the second paragraph. And I would submit the city is proceeding under (1)(b).

"The Court: No question about the city is now proceeding under (1)(b), you bet.

". . ."

Later during argument after the close of the testimony in the hearing, the question again arose as to which statutory subsection the matter was brought:

"The Court: Now you're arguing Section (8)(a) and I'm sure, Mr. Joyce, you were going to argue (1)(a).

"Mr. Joyce: That's correct.

"The Court: Which are you proceeding under? The order indicates we are proceeding under (1)(b).

". . .

"The Court: I want to make the record clear so in case anybody wants to appeal this thing that I am proceeding under 66.05(1)(a) and I want to make it clear for everybody that I am determining that under the state of the pleadings that I believe that Mr. Donley was proceeding under 66.05(1)(a) and the remedies described thereafter and not under paragraph (8) of 66.05."

the electrical service to the building disconnected. Since 1971, the building has remained vacant, although Donley testified he returned occasionally to use some law books he keeps there.

It is undisputed that the roof of the building leaks and that water has seeped into the office area causing damage and stains to the ceiling tiles and buckling to the floor. Additionally, the floor in one of the offices has settled to the extent that there is a noticeable "hump" in it. Also several of the basement windows in the building had been broken and remained unrepaired at the time of the hearing.

At the hearing, Donley presented testimony from a roofing contractor who stated he would repair the roof on the building for $600. Another building contractor testified he would level the floor in the office area, repair and replace the ceiling tiles, reglaze the broken windows, and secure an exterior door on the building for a total of $1,250. Although acknowledging that the electricity had been disconnected from the building, Donley denied there was any problem with the furnace or heating system and denied that there was any problem with the plumbing. He and his witnesses also denied that there were any structural defects in the building.

In contrast, the city presented testimony at the hearing indicating that some of the water pipes used in the hot water heating system of the building had burst. Witnesses for the city also testified that due to changes in the building codes in the city of Menomonie, the reinstallation of electrical services to the building would require rewiring the building at an estimated cost of $1,375. Additionally, the city's witnesses estimated it would cost $1,589 for a new roof, and $5,000 for the repair of the rear of the building which the city claimed was progressively settling and buckling. The city also produced evidence revealing that in 1970 Donley ap-

peared before the Board of Review of the city of Menomonie in a successful effort to get the assessed valuation of the building lowered. At that time, Donley claimed that the building was deteriorated and that the "ground floor [was] in a sad state of repair except the office part . . ." and that ". . . it could not be repaired as a good business practice . . . [because] the building is gradually falling into the lake . . ." The Board of Review thereafter lowered the assessed valuation of the building from $12,350 to $6,150.

No testimony was presented to show the building was in need of sewer or toilet repairs or that the building was a fire hazard. Nor was there any testimony that the building was infested with pests or rodents or that it was in an unsanitary condition, although there was some reference to boxes, papers and books strewn about the office area. The city did not attempt to prove that the building had an adverse or deleterious effect on the neighborhood in which it was located, or on the public, or that the building has caused any injury or annoyance to any member of the public.

The trial court, after a view of the building, found it to be structurally sound. The court made no finding as to the reasonableness of the building inspector's raze order nor as to the reasonableness of the cost of repairs for the building. However, the trial court ordered Donley to make repairs to the building based for the most part on the testimony and estimates given to Donley by his contractor witnesses.

Specifically, in its order the trial court found:

"The premises described in the pleadings herein are structurally sound; but that said premises are unfit for human habitation in violation of sec. 66.05(1)(a), Wisconsin Statutes."

Also in its order, the trial court continued the previously entered temporary restraining order through the

15th of May, 1975, and further ordered that Donley make the premises habitable by making the following repairs:

"(1) The installation of a new roof on said premises to consist of two-ply fifteen pound felt and pitch,

"(2) The installation of an operable electrical service to said premises,

"(3) The repair of the heating and plumbing system in said premises to place said system in an operable condition,

"(4) The leveling of the floor in the rear room of the center office complex at street level, the repair and replacement of damaged ceiling tile in all offices at street level, the replacement of all broken windows in said premises, and the securing of exterior door leading to the rear porch on the street level of said premises to make the same inoperable."

The trial court further ordered that if the repairs were not accomplished by May 15, 1975, the temporary restraining order would be dissolved and the city of Menomonie could then proceed to raze the premises pursuant to sec. 66.05 (2) (a), Stats.

Thereafter, Donley moved for a modification of this order asserting among other things that it was his intention to let the building remain vacant and pointing out that the repairs ordered insofar as they relate to heat, electricity and plumbing in no way affect the health, safety or welfare of the public because the building is not open for use or occupancy by the public. The motion asked that the original order be modified to eliminate the requirement of installing operable electrical service to the premises and to eliminate the requirement of repairing the heating and plumbing systems to an operable condition. The trial court by order denied the motion for modification, stating:

". . . The statute clearly indicates the building must be repaired so as to be safe, sanitary and fit for human

habitation, occupancy or use. The argument of the Plaintiff that the use by the Plaintiff in good weather to go into the building and look over his old law books and papers is not a use of the building. It is nothing more than allowing it to remain empty. The statute does not require that the building be repaired so that it is not dangerous to those who walk by it. The statute declares that it shall be repaired so that it will be safe, sanitary or otherwise fit for human habitation, occupancy or use. To do this requires that the building have an operable electrical plumbing and heating system."

Donley now appeals to this court from the trial court's order requiring the specified repairs and from the order denying his motion to modify the original order.

Donley's initial attack on the action taken by the trial court is based on the claim that in order for the city to take any action with respect to a building, such building must first be determined to be a public nuisance. In *Milwaukee v. Milbrew*, 240 Wis. 527, 533, 3 N.W.2d 386 (1942), this court stated that: ". . . it is only a public nuisance that may be punished by a municipality in the exercise of its police powers." See also *Boden v. Milwaukee*, 8 Wis.2d 318, 327, 99 N.W.2d 156 (1959). In response to this argument, the city contends the building is presumptively a public nuisance under sec. 66.05(1)(b), and concedes that the definition of a public nuisance as contained in sec. 66.05(8)(d), Stats., does not apply to the instant situation.

We reject the city's argument contained in its brief that the building was presumptively a public nuisance under the provisions of sec. 66.05(1)(b), Stats., because the trial court by ordering repairs implicitly held that it had not been established it would cost more than 50% of the value of the building to repair it. The Donley building was not presumptively a nuisance but rather was declared to be a public nuisance by the trial court's finding that it was in violation of sec. 66.05(1)(a),

Stats.,[6] as being unfit for human habitation, occupancy or use—a finding which Donley does not specifically challenge on this appeal as being against the great weight and clear preponderance of the evidence. *See Posnanski v. City of West Allis*, 61 Wis.2d 461, 213 N.W. 2d 51 (1973). Therefore, the building, found to be unfit for human habitation, occupancy or use, is a public nuisance against which the city could appropriately take action.

Donley's second argument on this appeal, and one that we find has merit, is that even if the building is a public nuisance, by ordering the repairs it did, the court exceeded the scope of its authority.

In *Appleton v. Brunschweiler*, 52 Wis.2d 303, 190 N.W. 2d 545 (1971), this court recognized that a municipality is required to use the least drastic way of removing a public nuisance. *Id.* at p. 307. Municipalities do not possess unrestricted powers to abate nuisances, but rather abatement is limited to the necessities of the case.[7] This general principle is equally applicable in prescribing that courts can go no further than is necessary to protect the public interest. The remedy which a

---

[6] Sec. 823.21, Stats., provides as follows:

*"Dilapidated buildings declared nuisances.* Any building which under s. 66.05(1) has been declared so old, dilapidated or out of repair as to be dangerous, unsafe, insanitary or otherwise unfit for human habitation or has been determined to be unreasonable to repair under said statute, is a public nuisance and may be proceeded against under this chapter."

However, to say that a building is old and dilapidated does not alone justify its condemnation as a nuisance. *See Childs v. Anderson*, 344 Mich. 90, 73 N.W.2d 280, 282, 283 (1955).

[7] *Echave v. City of Grand Junction*, 118 Colo. 165, 193 P.2d 277 (1948); *Aurora v. Meyer*, 48 Ill.2d 131, 230 N.E.2d 200 (1967). See also Annot., *Constitutional Right of Owner as Against Destruction of Building by Public Authorities*, 14 A.L.R.2d 73 (1950), at pp. 92–97.

city may obtain in court is limited to the necessities of the case. *See City of Chicago v. Busch*, 132 Ill. App.2d 486, 270 N.E.2d 249 (1971), and *Albert v. City of Mountain Home*, 81 Idaho 74, 337 P.2d 377 (1959).

Rhyne in his treatise, *Municipal Law* (1957), in sec. 26.21 at p. 547, stated the general principle in the following terms:

> "Only a public nuisance may generally be abated by the municipal corporation. But any such abatement must be limited to the necessities of a case, and a municipal corporation must not, in the abatement of a nuisance, inflict unnecessary injury or invade private property beyond the needs."

See also 7 McQuillin *Municipal Corporations* (3rd Ed. 1968) sec. 24.561 at p. 591.

By its terms, sec. 66.05(1)(a), Stats., is concerned with protecting the public from unsafe and unsanitary buildings. This court has stated that this statute is to protect the public from exposure to the evils caused by buildings which have seriously deteriorated so as to become unsafe or unsanitary. *Appleton v. Brunschweiler, supra*, at p. 306.

Subsec. (3) of sec. 66.05, Stats., sets forth the procedure by which the owner or anyone affected by an order of the building inspector made pursuant to subsec. (1)(a) of that statute, may challenge the reasonableness of such order. This is an exclusive remedy and the owners have but 30 days within which to apply to the circuit court for a temporary restraining order prohibiting the building inspector or the city from proceeding further until the court has had an opportunity to review the reasonableness of the initial order. *Siskoy v. Walsh*, 22 Wis.2d 127, 125 N.W.2d 574 (1963); *Gimbels Midwest, Inc. v. Northwestern National Insurance Company*, 72

Wis.2d 84, 97, 240 N.W.2d 140 (1976) (and cases cited therein). Under this statute, the circuit court's duty is to determine the reasonableness of the building inspector's order, to dissolve the restraining order if the building inspector's order is found to be reasonable, or to continue the restraining order, or "modify it as the circumstances require . . ." if it is found to be unreasonable. Sec. 66.05(3), Stats.

In the instant case, Donley applied for a temporary restraining order pursuant to 66.05(3), Stats., but the circuit court made no determination as to the reasonableness of the building inspector's order requiring Donley to raze rather than repair his building. The court made no determination as to whether, in fact, it was unreasonable to repair the building, although as pointed out above, implicit in the trial court's order requiring repairs, is a rejection of the building inspector's determination that it would be unreasonable to repair it. The circuit court here simply supplanted the building inspector's raze order with its own order requiring the appellant to install a new roof of certain thickness, to install operable electrical service to the building, to repair the heating and plumbing systems, to level the floor in the rear room, and to replace and repair ceiling tile and floor tiles and broken windows in the building. This repair order accompanied a specific finding by the court that the Donley building was structurally sound.

While it is true under sec. 66.05(3), Stats., the circuit court may modify the building inspector's order, the only order the building inspector could make under subsec. (1)(a) was to require the owner to raze the building or if the building could be made safe by repairs, to give the owner the option to repair and make the building safe and sanitary or to raze it. If the owner fails or refuses to comply within the time prescribed, the inspector shall cause the building to be razed or closed if unfit

for human habitation, occupancy or use. Sec. 66.05(2) (a), Stats.

We conclude that any modification made by the trial court of the building inspector's order must be made in light of the purpose of sec. 66.05(1)(a)—the protection of the public from old, dilapidated buildings which have become unsafe or unsanitary. The trial court ordered Donley to install operable electrical service to the building and repair the heating and plumbing systems. These repairs relate to making the building fit for human habitation, occupancy or use. As the testimony revealed, the public would have no access to this building, and there was no evidence of harm to the public from the interior or exterior of the building if the building were closed for any uses. Because the purpose of this statute is to eliminate hazards to the public associated with old, dilapidated buildings and not necessarily to make such buildings tenantable, the trial court's remedy went beyond the necessities of the case. The repairs ordered would restore the building to a condition in which it could again be used to house a law office and barbershop. The repairs were not required to make the building which was found not to be in danger of structural collapse, safe or sanitary for the public.

Neither the inspector nor the trial court can look at the building and determine the repairs needed without considering the use to which the building is to be put. The inspector and the court must comply with the general principle discussed above that the abatement of a nuisance is limited to the necessities of the case.

Donley has not challenged on appeal the structural repairs ordered by the trial court requiring the installation of a new roof, the leveling of the floor, the repair of the ceiling tile and windows and the securing of the exterior door. Implicit in Donley's testimony at the court

hearing, in his motion to modify the order and in his brief, is a willingness to carry out such repairs. Therefore, we express no opinion as to the appropriateness of such repairs in a sec. 66.05(1)(a) action and we limit our consideration of the trial court's order to the non-structural repairs challenged by Donley requiring the installation or repair of operable electrical, plumbing and heating systems in the building. For the reasons stated above, we conclude these repairs were in excess of the trial court's authority under sec. 66.05(1)(a) because these repairs, under the circumstances of this case, go further than necessary to protect the public from an old, dilapidated building.

Accordingly, we modify the trial court's order of January 30, 1975 as follows:

(1) That part of the order requiring Donley to make said premises habitable and requiring him to install operable electrical service and to repair the heating and plumbing systems is deleted.

(2) The building inspector shall post a placard on the premises containing the following words: "This Building Cannot Be Used for Human Habitation, Occupancy or Use."

*By the Court.*—The orders appealed from are modified, and as modified, affirmed.