VILLAGE OF WILLIAMS BAY, a political subdivision, Plaintiff-Respondent,

v.

Michael SCHIESSLE a/k/a Michael Shiessle, Lommen D. Eley and John P. Koch, Defendants-Appellants.†

Court of Appeals

*No. 86–1358. Submitted on briefs January 29, 1987.—Decided March 4, 1987.*

(Also reported in 405 N.W.2d 695.)

† Petition to review denied.

On behalf of the defendants-appellants the cause was submitted on the briefs of *Thomas R. Neshek* of *Godfrey, Pfeil & Neshek, S.C.* of Elkhorn.

On behalf of the plaintiff-respondent the cause was submitted on the brief of *Richard R. Grant* of *Consigny, Andrews, Hemming & Grant, S.C.* of Janesville.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.  The Village of Williams Bay successfully withstood a challenge to its building inspector's order that defendants raze and remove four buildings. Defendants appeal, claiming that the "cost of … repairs" does not exceed the 50% statutory formula value pursuant to sec. 66.05(1), Stats. We disagree and affirm.

The defendants are Lommen D. Eley and John P. Koch who administrate a trust benefiting Michael Schiessle. The trust holds title to the property in this action, namely four buildings in the back of two houses known as 150 and 152 Williams Street in Williams Bay.

These properties were uninhabited for many years. Windows were broken and furniture was lying

in the yard, making access to children easy and convenient as well as dangerous. The record discloses that children had parties in the houses and played around the furniture.

Inspection revealed substantial problems with all four buildings. For instance, doors were gone; the only thing holding the lumber together in each building was moisture; there were holes in the exterior of the buildings such that a complete siding job would be needed to keep animals out; and there were defective exits such that the porches needed repair. Additionally, there were plumbing, heating and electrical problems in all of the buildings.

The parties stipulated to the amount necessary to equal the 50% property value calculation under sec. 66.05(1)(b), Stats.[1] These values are: Building 150A—$4,401.90; Building 152A—$5,502.37; Building 154—$4,732.04; and Building 154A—$3,301.42. The building inspector concluded that the costs of repair for the buildings would far exceed these figures. It is this conclusion that is debated by the defendants.

The defendants' assertion is based upon the testimony of an architect who represented that the true cost of repair for each of these buildings was under the stipulated 50% values. The architect time and again focused upon repairs that would make the

[1]Section 66.05(1)(b), Stats., states:

> Whenever a municipal governing body, inspector of buildings or designated officer determines that the cost of such repairs would exceed 50 per cent of the assessed value of such building divided by the ratio of the assessed value to the recommended value as last published by the department of revenue for the municipality within which such building is located, such repairs shall be presumed unreasonable and it shall be presumed for the purposes of this section that such building is a public nuisance.

premises safe from hazards to the public. At the same time, the architect commented upon the building inspector's repair list and opined that he would disregard any listed repair cost having to do with occupancy, human habitation and use.

The architect's opinion no doubt stems from language in *Donley v. Boettcher,* 79 Wis. 2d 393, 255 N.W.2d 574 (1977). In that case, the supreme court held that the list of repairs deemed necessary by the building inspector went too far. The court wrote:

> The trial court ordered Donley to install operable electrical service to the building and repair the heating and plumbing systems. These repairs relate to making the building fit for human habitation, occupancy or use. As the testimony revealed, the public would have no access to this building, and there was no evidence of harm to the public from the interior or exterior of the building if the building were closed for any uses. Because the purpose of this statute is to eliminate hazards to the public associated with old, dilapidated buildings and not necessarily to make such buildings tenantable, the trial court's remedy went beyond the necessities of the case. The repairs ordered would restore the building to a condition in which it could again be used to house a law office and barbershop. The repairs were not required to make the building which was found not to be in danger of structural collapse, safe or sanitary for the public.

*Id.* at 407, 255 N.W.2d at 580. As in *Donley,* the defendants here claim that the only repairs relevant are those necessary to make the buildings structurally sound such that they are not in danger of collapse and are safe and sanitary for the public. Defendants argue that the building inspector included in his list of

repairs such items as faulty heating and plumbing, a new paint job and siding, lack of insulation, faulty water heater and inadequate offstreet parking. The defendants conclude that their expert's narrower focus on only those repairs necessary to eliminate the hazards to the public was germane to the issue. To add heating, plumbing and the like would be contrary to *Donley.*

As pointed out cogently by the trial court, however, the *Donley* case is easily distinguishable. In *Donley,* the owner had no intention of allowing human habitation in the building. He was not intending to again house a barbershop and law office. Since the purpose of the statute is to eliminate hazards to the public, and since the public would not be allowed in the building, the repairs necessary in that case were only those required to make the building safe for the public as it was *intended* to be used.

Here, however, the evidence is that defendants intended to rent the property. Ads had appeared in the local paper offering the buildings for rent, which ads appeared for about four months. As the *Donley* case itself said:

> Neither the inspector nor the trial court can look at the building and determine the repairs needed without considering the use to which the building is to be put. The inspector and the court must comply with the general principle discussed above that the abatement of a nuisance is limited to the necessities of the case.

*Id.* The use of the buildings here was to rent the premises. To rent the premises, it is not enough to repair a building so that it is safe and sanitary; it must also be fit for habitation, occupancy and use. That is

what sec. 66.05(1)(a), Stats., mandates a building inspector to take into consideration. If the purpose of the building is to be inhabited, then it is a danger to the public if it is determined to be unfit for that purpose.

The trial court's duty is to determine the reasonableness of the building inspector's order. *Donley,* 79 Wis. 2d at 406, 255 N.W.2d at 579–80; *see also* sec. 66.05(3), Stats. Whether a building inspector's order is reasonable is a question of law. *See Wassenaar v. Panos,* 111 Wis. 2d 518, 525, 331 N.W.2d 357, 361 (1983). As in *Wassenaar,* however, the finding of unreasonableness is so intertwined with the trial court's factual findings that we will give more credence to this legal determination by the trial court than we do with other legal questions. *Id.*

The trial court applied the correct legal standard after observing the defendants' intended use of the premises. Based upon this, we affirm.

*By the Court.*—Judgment affirmed.