(No. 40366.—

THE CITY OF AURORA, Appellee, *vs.* CLARE J. MEYER *et al.* (THERESA STEINBRECHER, Appellant.)

*Opinion filed September 29, 1967.*

O'Brien, Burnell, Puckett & Barnett, of Aurora, (Wilson D. Burnell, Joseph H. Barnett, and Gary K. Mickey, of counsel,) for appellant.

William J. Foote, Corporation Counsel, of Aurora, for appellee.

Mr. Justice Klingbiel delivered the opinion of the court:

The circuit court of Kane County, after a hearing, entered an order authorizing the city of Aurora to demolish a building situated at 116 East New York Street on the basis that it was in a dangerous and unsafe condition. One of the owners (herein called defendant) appeals, contending that the statute purporting to provide for such action is unconstitutional and that the finding is against the manifest weight of the evidence.

The city urges at the outset that the issue of constitutionality was not raised in the trial court so as to entitle the defendant owner to argue it here, that the appeal presents no debatable constitutional issue, and that the cause should be transferred to the Appellate Court. We do not agree. The record shows that the defendant moved to dismiss on the ground, *inter alia,* that the statute purports to authorize the city to take private property without just compensation and without due process of law. It further appears that the court denied the motion, saying "I believe this statute is constitutional." The issue was adequately raised and ruled upon, and the appeal does present a fairly debatable constitutional question.

Before reaching it, however, we consider first the contention that the evidence fails to support the court's finding. The statute in question, section 11—31—1 of the Illinois Municipal Code, provides insofar as is relevant that "The corporate authorities of each municipality may demolish, repair or cause the demolition or repair of dangerous and unsafe buildings or uncompleted and abandoned buildings. No building may be boarded up or otherwise enclosed. The corporate authorities shall apply to the circuit court of the county in which such building is located for an order authorizing such action to be taken with respect to any such building if the owner or owners thereof, after at least 15 days' written notice so to do, shall have failed to put such building in a safe condition or to demolish it." (Ill. Rev. Stat. 1965, chap. 24, par. 11—31—1.) Further provisions make the cost of demolition or repair recoverable from the owner and make it a lien on the real estate.

There is no contention here that the building is uncompleted and abandoned. It thus appears that before the city may step in and repair or demolish, it must be shown that the building is "dangerous and unsafe." Much of the evidence relating to the condition of the structure is not in dispute. It is a one-story brick building located in the downtown business district of Aurora and is abutted on either side by other buildings. Now vacant, it was built in the latter part of the 1890's and was remodeled at a cost of some $2,800 in 1961. The work done at that time was inspected and approved by the city building inspector. At the time of the trial the locks on the doors remained broken and until shortly before the trial the place was littered with dirt and debris.

On January 15, 1966, the mayor notified the owners that the premises were "in a dangerous and defective and unsafe condition in that they are abandoned, that vagrants are entering the buildings, starting fires therein, and making the buildings dangerous, defective and unsafe to adjoining

property and the public in general, further the buildings are in violation of the health, fire and building codes of Illinois and Aurora in many respects including but not limited to the electrical wiring, structural defects, unsanitary plumbing, unsafe floors, walls, roof and windows, and the exterior brick and mortar are deteriorating. If you fail to demolish or repair the same to meet the requirements of the applicable health, fire and building codes of Illinois and Aurora, within fifteen days hereof, the City shall demolish or repair the same to meet the requirements of laws and codes and the cost will become a lien on the property superior to all existing liens except taxes." The defendant wrote asking what in detail the alleged defects consisted of. Neither the mayor nor anyone else on behalf of the city made any reply.

A structural engineer accompanied by the building inspector made a visual examination of the property in the summer of 1966. He testified that the central beam appeared to have been attacked by dry rot, that one of the supporting columns was not resting on its concrete base, and that new concrete-block side walls in the basement had "mostly a cosmetic effect rather than any true structural significance since the joists are actually supported on the old foundation of the building on either side." He stated further that the joists appeared to be solid, and that the old foundation seemed to be doing an adequate job of supporting the building. He made no tests whatever but said the building is unsafe because of the condition of the center beam and the supporting column. He admitted the building could be made safe.

The building inspector testified that the stairwell to the basement was dilapidated but would be no problem for a carpenter to restore, that the doors and windows needed fixing, and that the bricks in the party wall were old and crumbling. He also stated that the center beam could be

replaced by a steel beam and that the front and back walls were in fair condition.

A fire inspector testified that at the time of his inspections the building was open to vagrants, and trash and debris had accumulated over a period of time. He further testified it had been cleaned up at the time of trial and no longer constituted a fire hazard.

A general contractor with forty years experience in the business testified on defendant's behalf that he had done the repair work in 1961, building a new fire wall in the rear and new side walls the full length of the building in the basement, repairing the floor, installing a new front door and lock, rebuilding rest rooms and so on. He testified further that the weight of the building was supported on the new concrete-block foundation walls, that he tested the center beam by chopping at it with a hand axe to determine if there were any soft spots and found it to be sound, that a new furnace had been installed some time in 1961 or later, and that from his observation and inspection he saw nothing dangerous or unsafe about the building. He stated that the cost of putting a steel beam down the center of the building would be approximately $400. Defendant unsuccessfully sought to introduce testimony as to the value of the building. When the evidence was ruled inadmissible an offer of proof was made to show the value as approximately $15,000 as compared with repair costs of about $500.

Although the city's witnesses admitted that the alleged defects could be repaired and the building made safe, there is no proof of the extent or proportion of its value to which the building had deteriorated. Nowhere is there testimony comparing or evaluating the portions deteriorated and in bad condition as against those remaining in good condition, to determine whether demolition rather than repair was appropriate. Nor did the court make any such finding

in authorizing demolition. The order simply finds the building to be "in a dangerous and unsafe condition" and grants the city the right to demolish it. In our opinion the statute, in providing for repair or demolition in the alternative, contemplates repair where feasible and demolition where the state of deterioration is such that repairs would amount to a substantial reconstruction.

In *West* v. *City of Borger*, (Tex. Civ. App.) 309 S.W.2d 250 (1958) the trial court granted the city authority to demolish a building, in case the owner failed to do so, on the ground that it constituted a fire hazard. On appeal the court found that although the evidence showed the building to be a serious fire hazard the city failed to prove it was beyond repair so as to warrant complete demolition. In reversing the judgment the court said "We have very carefully studied the facts of this case and are forced to the conclusion that the repairs the testimony shows were needed as of the day of the trial were not such as to amount to a substantial reconstruction and that the trial court was in error in refusing appellant's motion for instructed verdict. The uncontradicted testimony shows the repairs needed could be made for approximately $3,800 while complete reconstruction would cost approximately $17,000. We are in complete sympathy with the city of Borger in their efforts to improve the quality of the buildings within their fire zone but we believe any court should take a long look at any procedure that deprives a person of his property without compensation."

The law is well settled that in cases of this nature courts do not go further than is necessary to protect the public interest. Property may be ordered destroyed under certain conditions but only if the danger cannot be abated in any other way. It is only in cases where an absolute necessity exists that courts adopt the drastic method of correction by ordering destruction of the property. (*Childs* v. *Anderson*, 344 Mich. 90, 73 N.W.2d 280; *Echave* v. *City of*

*Grand Junction,* 118 Colo. 165, 193 P.2d 277.) In other words the remedy is limited to the necessities of the case. Where hazardous conditions may be remedied by repair without major reconstruction the building may not be destroyed. *Albert* v. *City of Mountain Home,* 81 Idaho, 74, 337 P.2d 377.

Although not expressed in so many words, the plain implication of the act involved here is that if the property can be repaired with comparatively little expense the city ought to adopt this course rather than complete demolition, that only in cases where the structure is substantially beyond repair is an order for demolition contemplated. There are many kinds of deficiencies which would render a building dangerous and unsafe, but which can readily be obviated by appropriate repairs. Inadequate wiring, or a weakened supporting beam as in the case at bar, even if serious enough to sustain a finding that the structure is dangerous and unsafe, would not in many cases warrant complete destruction. The cost of repairs may well be a small fraction of the building's value. The court should find from the evidence what the specific defects are which render the building dangerous and unsafe. If they are such as may readily be remedied by repair, demolition should not be ordered without giving the owners a reasonable opportunity to make the repairs.

We express no opinion on the question whether the statute as so construed violates the constitutional provisions invoked by the defendant. All we decide is that by a fair interpretation of the statutory language the court must find the structure to be beyond reasonable repair before authorizing the extreme remedy of demolition, and that evidence relating to the cost of such repair compared to value was improperly excluded in this case.

The judgment order is reversed and the cause is remanded to the circuit court of Kane County with directions to proceed in accordance with the views herein expressed,

without prejudice to the right of the city to take whatever steps may be necessary to render the building safe.

*Reversed and remanded, with directions.*