THE VILLAGE OF PALATINE, Petitioner-Appellee, *v.* K. REINKE, JR., *et al.*, Defendants-Appellants.

First District (4th Division)   No. 82—2198

Opinion filed September 22, 1983.

Allan Peters and John D. Kightlinger, both of Arlington Heights, for appellants.

Littlejohn, Glass & Yowell, of Northbrook (Bradley M. Glass, G. Kent Yowell, and Michael M. Roth, of counsel), for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Following a petition by the Village of Palatine (the Village) seeking declaration of municipal code violations and subsequent demolition of a house, the trial court ruled in favor of the Village and this appeal was brought. Two issues are raised for review: (1) whether the trial

court erred in considering evidence obtained during an inspection of the subject property, and (2) whether the trial court erred in ordering demolition of the house.

We affirm.

The defendants are Marc Stegen (Stegen), the tenant occupying the house for three years prior to and at the time of the proceedings in the trial court, Robert Dall (Dall), the owner of the property as beneficiary of a land trust, and Karl Reinke, who sold the property to Dall.

On February 26, 1981, the Village filed a petition in the circuit court of Cook County seeking demolition of the house. A hearing on the matter commenced on April 28, 1982. The facts adduced at the hearing may be summarized as follows: the subject property located on the outskirts of Palatine consists of a two-story farm house, two silos and a garage. On December 16, 1980, Gary Duchesne, code enforcement officer of the Village, inspected the exterior of the house and the surrounding property. Following a request from Duchesne, by letter, Stegen contacted Duchesne by telephone. Arrangements were made for Duchesne to inspect the house in Stegen's absence. Stegen advised Duchesne to confine the inspection to the basement. Stegen testified that he assumed the inspection was to take place within several days of his conversation with Duchesne but that he (Stegen) did not discuss any time restrictions. Duchesne next inspected the premises on January 26, 1981, with Village health inspector Bob Roels. Sometime after that visit, Duchesne contacted Karl Reinke, by letter and telephone, concerning the condition of the property.

On February 5, 1981, Duchesne and Roels again went to the house. Stegen admitted them to the house and allowed an inspection of the interior. The next day, Duchesne and Roels returned with Cecil Kistler, Palatine director of environmental health. Stegen permitted them to inspect the basement. The trial court ruled that the inspection of January 26, 1981, was nonconsensual. The court noted that the consent given on December 16, 1980, was too remote.

The following defects were some of those noted during the inspections on February 5 and 6, 1981: one of the silos on the property has no roof, is tilting, and has loose or missing siding; there are a number of junk cars in the yard; there are several broken windows in the house; a large portion of the siding is rotting; there are cracks in the foundation of the house (many of them severe); there are holes in the walls; the basement stairs are rotting and steps are missing; a supporting beam of the house is bowed and cracked; there are exposed electrical wires in several parts of the house; there is no running wa-

ter; there was a gas leak; and a combination of sewage and waste water is pooled in an open trench in the basement as well as in the ground outside. Additionally, two residents of the area testified that the property was located in an area of single-family homes. Children play in the area and the property is considered unsightly and unsafe.

On June 1, 1982, the trial court ruled in favor of the Village. The court found numerous violations of the Village code, ordered eviction of the tenant within 15 days, and fines totaling $2,600. Defendants were granted 60 days to make repairs to comply with the Village code. The matter was continued to August 19, 1982, for a status report to the court. Defendants Stegen and Dall appealed the order of June 1, 1982, and on September 1, 1982, this court dismissed the appeal, ruling that the order appealed from was not a final appealable order.

On September 10, 1982, the trial court granted an order for demolition of the house. At the time of oral arguments before this court, a stay of the trial court's order was in effect and the house had not been demolished.

■ Defendants argue that the trial court's ruling cannot stand since it was based on illegally obtained evidence. They argue that such inspections as were carried out in this case significantly impinge upon Stegen's fourth amendment rights. Similarly, Dall's constitutional rights as the lessor of the building were violated.

Defendants make additional arguments that Stegen, as lessee, did not have authority to consent to an inspection on behalf of Dall. Defendants cite *Camara v. Municipal Court* (1967), 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727, and *See v. City of Seattle* (1967), 387 U.S. 541, 18 L. Ed. 2d 943, 87 S. Ct. 1737, in support of their arguments. They assert that the fact that Stegen permitted inspections of the premises on February 5 and 6, 1982, is meaningless, and all evidence produced as a result of those two inspections should be stricken. Furthermore, any consent given by Stegen was involuntary.

We do not agree with defendants' arguments. Further, we find that neither *Camara* nor *See* are applicable to the resolutions of the issues here. In *Camara*, the United States Supreme Court held that the fourth amendment bars prosecution of an individual who has refused to permit a warrantless inspection of his personal residence. In *See*, the only question that the court really considered was whether the holding in *Camara* applies to similar inspections of commercial buildings that are not used as residences.

In the case before us, while the entries and inspections were warrantless, we do not find them to be without consent. We agree with

the trial court that the inspection of January 26, 1981, was so far removed in time from Stegan's consent of December 16, 1980, as to make it nonconsensual. However, the trial court found, and we agree, that the inspections of February 5 and 6 were made with Stegen's consent. On February 5, 1981, Stegen allowed Duchesne and Roels to inspect the house. He did not restrict the inspection to any particular part of the house. On February 6, 1981, Stegen again permitted an inspection by Duchesne, Roels and Kistler. On that visit, Stegen restricted the three inspectors to the basement. Nevertheless, all three inspectors gave unrebutted testimony concerning the numerous Village code violations they observed on those two dates.

We find no merit in defendants' argument that since the inspection of January 26 was improper then the other two were also improper. Stegen personally allowed the inspectors into the house on February 5 and 6 constituting new consent for those inspections.

We find unconvincing defendants' argument that Stegen's consent was invalid without the affirmance of the landlord, Dall. Defendants point to no authority for their position. We agree with the Village that all that was necessary was proof that Stegen as the tenant with access and control of the property consented to the inspections. Even if Dall had the use and control of the house, such use and control would have been mutually shared with Stegen. Thus, it was reasonable for the inspectors to assume that the consent given by Stegen was valid. See *People v. Ford* (1980), 83 Ill. App. 3d 57, 403 N.E.2d 512.

■ Similarly, we reject defendants' argument that Stegen's consent was involuntary. The rule for determining the voluntariness of a consent to a search (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 248, 36 L. Ed. 2d 854, 875, 93 S. Ct. 2041, 2059; *People v. Sommer* (1977), 45 Ill. App. 3d 459, 460, 359 N.E.2d 1190, 1191), is that it must be shown that consent was not the result of duress or coercion, express or implied, but was in fact freely given. Whether consent has been given is a factual matter to be determined by the trial court, and that determination will be accepted by the reviewing court unless it is clearly unreasonable. (*People v. DeMorrow* (1974), 59 Ill. 2d 352, 358, 320 N.E.2d 1, 5.) We find that the record supports the trial court's determination that there was consent.

■ Defendants' second issue asserts that the trial court erred in ordering demolition of the house. They argue that there was insufficient evidence to support the court's order. They cite *City of Aurora v. Meyer* (1967), 38 Ill. 2d 131, 230 N.E.2d 200, in support of their arguments. They also argue that the evidence on which the demolition order was based was over a year old at the time of the order and

therefore was not indicative of the present condition of the building.

In *City of Aurora*, the Illinois Supreme Court said that a court should only order demolition if the dangerous conditions cannot be rectified in any other way and such action is necessary to protect the public. Further, the owners should be given reasonable opportunity to make repairs. In the instant case, there was evidence of serious and extensive defects in the building. In addition to the structural condition of the building, raw sewage flowed unrestricted into the ground outside and overflowed into an open trench inside the basement. There was evidence that nearby wells risked contamination. Neighborhood children sometimes played on the property near where the sewage collected.

It appears from the evidence that compliance with the Village code would necessitate *extensive* repairs. No estimates of the cost of repairs compared with the value of the building was submitted by defendants. See *City of Chicago v. Birnbaum* (1971), 49 Ill. 2d 250, 274 N.E.2d 22; *City of Aurora v. Meyer* (1967), 38 Ill. 2d 131, 230 N.E.2d 200.

At the time of the hearing of April 28, 1982, more than a year had passed since the inspection of the property. Defendants were aware that the Village was concerned about the condition of the property. Yet, there is no evidence of any attempts to make repairs. At a hearing in August 1982, a Village inspector testified that he visited the property four or five times since June 1982. The condition of the property was essentially unchanged.

We note that the trial court gave defendants 60 days in which to make repairs before ordering demolition. On September 10, three weeks after the expiration of the 60 days, the parties appeared before the trial court. There was no evidence that defendants had begun *any of the necessary* repairs. The court then ordered that demolition proceed.

We believe the record indicates that the public welfare, health and safety of the surrounding area was endangered by the condition of the property. See *City of Chicago v. Birnbaum* (1971), 49 Ill. 2d 250, 274 N.E.2d 22.

We hold that the trial court did not err or abuse its discretion in ordering demolition of the house, and its ruling is therefore affirmed.

Affirmed.

LINN and JIGANTI, JJ., concur.