(text box: 1)
 NO. 5-01-0212

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

THE CITY OF GRANITE CITY, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Madison County.

)

v. )  No. 99-MR-296

)

HOUSE OF PRAYERS, INC., )

)

     Defendant-Appellant, )

)

and )

)

MERCANTILE BANK (nee American )

Heritage), JOHN KAMPMANN, )

MELODY KAMPMANN, WILLIAM E. )

CARPENTER, EVANGELIST )

ASSOCIATION, INC., and Unknown Owners, )

Heirs, Devisees, and Other Interested )

Parties, )  Honorable

)  Ellar Duff,

     Defendants. )  Judge, presiding.

________________________________________________________________________

JUSTICE MELISSA CHAPMAN delivered the opinion of the court:

This is an appeal from an order of the circuit court to demolish property owned by the defendant.  The issues for review are (1) whether the circuit court erred in ordering the demolition of the property owned by the defendant, (2) whether the court erred in denying the defendant's motion for substitution of judge, (3) whether the court erred in denying the defendant's motion to modify and extend time, and (4) whether the court erred in ordering the defendant to post a bond and produce certain documents and information to the plaintiff.  We affirm.

I.  FACTS

House of Prayers, Inc. (defendant), is a nonprofit corporation incorporated in the State of Illinois.  In 1997, defendant purchased a parcel of property located at 2161 State Street, Granite City, Illinois, for $14,000.  The property included a wood-frame building that had been used as a church.  The property was in need of repair at the time of the purchase, but defendant eventually hoped to once again use the building as a church.  However, for a number of years, including the past four years of defendant's ownership, the building  remained vacant and occupied on occasion by vagrants and vandals.

In April 1999, the Building and Zoning Department (Department) of Granite City (plaintiff) inspected defendant's property in response to numerous complaints received concerning the condition of the building.  From this inspection, the Department determined that the building was in such a state of disrepair that the cost of repair was greater than the value of the building.  Accordingly, the Department performed a title search on the property to identify those parties with an interest in the property.  On April 14, 1999, notices were delivered to all interested parties that the repair or demolition of the building was sought.  On March 23, 1999, plaintiff's city council passed a resolution submitted by the administrator of the Department finding that the building was dangerous, was unsafe, and should be demolished.  

On June 19, 1999, plaintiff filed a complaint pursuant to section 11-31-1 of the Illinois Municipal Code (the Code) (65 ILCS 5/11-31-1 (West 2000)), seeking to demolish or repair the property.  On August 5, 1999, counsel for defendant entered an appearance and  a general denial of the allegations in plaintiff's complaint.  At a pretrial conference on April 24, 2000, the circuit court ordered defendant, within 60 days, to obtain a complete construction estimate, including remodeling plans, from a State-certified architect, that would bring the structure up to city building codes and that would make the building handicapped-accessible.  The court's order reset the matter for July 3, 2000.  On May 23, 2000, defendant filed several motions, including the following: (1) a motion to continue the July 3, 2000, status conference, (2) a motion to revise the court's April 24, 2000, order, allowing a certified engineer to perform the estimate and striking the handicapped-accessible language in the court's order as irrelevant, and (3) a motion requesting that the court accept an attached engineer's proposal to repair the property.  The court granted defendant's motion to continue and reset the remaining motions for a hearing on August 14, 2000.

At the August 14, 2000, hearing, the court allowed defendant to use a certified professional, licensed in the State, to provide the construction and remodeling estimates, but  it refused to strike the handicapped-accessible language from its April 24, 2000, order.  The court also gave defendant an additional 60 days to comply with its April 24, 2000, order.  On October 30, 2000, the matter was again called for a status hearing, at which time defendant moved to extend the deadline for complying with the court's April 24, 2000, and August 14, 2000, orders.  Defendant's motion was granted and the court gave defendant an additional 30 days to comply.  On December 4, 2000, the cause was continued by agreement of the parties to December 18, 2000.  On December 18, 2000, the court held another status conference, at which it determined that defendant was not in full compliance with the court's prior orders.  Defendant was granted an additional 30 days to comply and the matter was reset for January 29, 2001.  However, on January 18, 2001, defendant again moved to continue the matter.  On January 24, 2001, the court again granted defendant's motion to continue, and the matter was reset for February 26, 2001.  On February 26, 2001, the court found that defendant had again failed to comply.  The court ordered defendant to post a $50,000 bond and set out in detail the information that defendant was required to provide to fully comply with the court's prior orders.  The court ordered defendant to provide the information to plaintiff by 5 p.m. on February 28, 2001.

On March 2, 2001, defendant filed a motion to modify the court's February 26, 2001, order and to extend the time in which it could comply.  Defendant sought an additional 10 business days to comply with the court's February 26, 2001, order, alleging that it was burdensome, unreasonable, and prejudicial.  Defendant further complained that its architect had indicated that he was unable to comply with the court's order in the time allotted.  Defendant alleged that the amount and timing of the bond required by the court was overly burdensome, and it sought to have the order stricken with regard to the bond, to have the amount reduced, and to have the court allow a surety bond in the place of a cash bond.  

On March 5, 2001, a hearing was held on defendant's motion to extend and modify the court's February 26, 2001, order.  Immediately prior to the March 5, 2001, hearing, defendant filed a motion for substitution of judge.  After hearing arguments from the parties, the court denied defendant's motion to substitute and its motion for an extension of time.  In denying defendant's motion to substitute, the court characterized the motion as untimely.  The matter was given a final setting of March 15, 2001.  On March 15, 2001, the matter was continued on plaintiff's motion and reset for March 29, 2001.

On March 29, 2001, the petition for repair or demolition was tried.  Glen Hollis, plaintiff's building and zoning administrator, testified that he first inspected the building in approximately April of 1999 in response to numerous complaints.  Mr. Hollis identified several unsafe and dangerous aspects of the building.  Mr. Hollis testified that upon his inspection he found that the building had been leaking and had a great deal of moisture in it, that the building was filled with trash and debris, that the floor had holes in it and was caving in, that the roof was sagging due to the removal of supports and broken rafters, and that the electrical system in the building was shot and not up to code.  Mr. Hollis testified that he had worked in the construction industry for approximately 50 years, and he estimated that the cost to repair the roof was $25,000, the cost to repair the floor was $10,000 to $12,000, the cost of rewiring was $25,000, and the cost to bring the plumbing up to code was $18,000 to $20,000.  Mr. Hollis noted that to use the building as a church would additionally require it to be handicapped-accessible.  Mr. Hollis stated that he believed that it would be cheaper to tear down the building to its foundation and reconstruct it rather than to try to repair it.

John Apperson, a building inspector for plaintiff, also inspected the building and testified that the building was vacant and in a state of disrepair.  Mr. Apperson testified that from the inside of the building, he could see outside through the roof and that from the basement, he could see up into the second level.  Mr. Apperson testified that the overall condition of the building, and particularly the roof and floor, was unsafe.  He also noted that  the large beam in the center of the building and the trusses were cracked and that the roof was swayed in the middle and coming down.  Mr. Apperson stated that children and adults had played in and occupied the building on occasion.

Danny Dawson, from whom defendant sought bids to perform repairs on the building, testified that he has been a licensed general contractor for the past six years.  Mr. Dawson stated that he inspected the building on four different occasions.  He believed that water damage was the cause of the problems to the roof and floors.  He acknowledged that some of the trusses were broken and rotting due to water damage.  Mr. Dawson testified that he submitted bids to defendant for $22,500 to repair the roof, $525 to tear out a wall and install wheelchair ramps into the basement, and $5,500 to install two bathrooms upstairs.  Further, Mr. Dawson stated that, although he had not provided a bid to defendant, he believed that the estimated cost to build a wheelchair ramp for the building would be $2,000 and that the estimated cost to repair the floor would be $2,000.  Mr. Dawson estimated that it would cost $500,000 to replace the building.

Melody Kampmann, defendant's president, testified that defendant purchased the property for $14,000 in 1997.  Ms. Kampmann stated that, according to their architectural consultant, renovating the building would cost $42,715 and tearing down the existing building and rebuilding it would cost $509,000.  However, Ms. Kampmann conceded that defendant had not acquired a bid to rewire the electrical system or repair the plumbing in the building.

At the conclusion of the evidence and arguments from the parties, the court ruled in favor of plaintiff, authorizing the demolition of the building.  In ruling, the court found (1) that defendant purchased the property knowing that the building was in need of repair, (2) that it was established that the roof, floor, rafters, and ceiling and the electrical, plumbing, and heating and cooling systems were defective, (3) that young children and vagrants were going into the building, (4) that the conditions of the building made it very dangerous for those entering, (5) that debris and the falling ceiling presented a serious fire hazard, (6) that the building was in full disrepair, (7) that everything in the building needed to be replaced except the walls, doors, and windows, (8) that the building could not be repaired without major reconstruction, (9) that defendant paid $14,000 for the building, which was the fair market value, (10) that the building could not have increased in value since its purchase, (11) that the most conservative estimate for repairs was nearly three times the purchase price of the property, and (12) that defendant was ordered by the court on at least four occasions to provide evidence of its proposal to bring the building up to code and failed to comply.  The court also found that plaintiff had met its burden of proof. 

The court issued a written order on March 29, 2001, authorizing the demolition of the property.  The order provided, in pertinent part:

"2.  That the Plaintiff, City of Granite City, has fully sustained the material allegations of the complaint[] and that the building located at 2161 State Street, Granite City, Illinois, is dangerous and in an unsafe condition.   

 3.  That the building in question requires a large amount of extensive repairs that would require substantial reconstruction of the premises[] and would have an anticipated expense far in excess of the market value of the premises." 

Defendant filed a timely appeal.

II.  ANALYSIS

Defendant argues that the court erred in ordering the demolition of its building.  Specifically, defendant contends that the court's order of March 29, 2001, failed to state the specific defects existing in the building and that the defects cited by the court orally lacked sufficient specificity.  Defendant further contends that the court's failure to find that the building was beyond reasonable repair was error and that merely finding that the building required repairs that would require substantial reconstruction was insufficient.  Lastly, defendant contends that the court's failure to state specific defects denied defendant the opportunity to repair any such defects and avoid demolition.  

Plaintiff argues that the circuit court's ruling was proper based on the evidence at the trial establishing that the building was unsafe and dangerous and that substantial reconstruction would be required to make it safe.  Plaintiff argues that the court, in ruling from the bench, specified what the defective aspects of the building were and that the proposed repairs constituted a substantial reconstruction of the building.  Further, plaintiff contends that the court's ruling was also proper in light of defendant's repeated failure to comply in a timely manner with the court's many orders.  We agree. 

Section 11-31-1 of the Code contemplates repairs when feasible and demolition when the state of deterioration is such that repairs would amount to substantial reconstruction.  
City of Aurora v. Meyer
, 38 Ill. 2d 131, 135, 230 N.E.2d 200, 203 (1967).  The statute implies that, if the property can be repaired with comparatively little expense, the city ought to adopt this course rather than complete demolition and that only in cases where the structure is substantially beyond repair should an order for demolition be contemplated. 
Meyer
, 38 Ill. 2d at 137, 230 N.E.2d at 204.  In demolition cases, courts "should find from the evidence what the specific defects are which render the building dangerous and unsafe." 
Meyer
, 38 Ill. 2d at 137, 230 N.E.2d at 204.  If the defects "may readily be remedied by repair, demolition should not be ordered without giving the owners a reasonable opportunity to make the repairs."  
Meyer
, 38 Ill. 2d at 137, 230 N.E.2d at 204.

In addressing defendant's argument that the court's order failed to state the specific defects and that its oral findings lacked sufficient specificity, we note our decision in 
City of Alton v. Carroll
, 109 Ill. App. 3d 156, 440 N.E.2d 290 (1982).  In 
Carroll
, the defendants also argued that the trial court erred in failing to specify each particular defect in a building found to be unsafe.  In rejecting the defendants' arguments, the court in 
Carroll
 held that, in addition to the trial court's findings, the record and testimony sufficiently illustrated the basis for the demolition order. 

Here, we believe that the court went to great lengths to articulate the defects in defendant's property.  The oral findings of the court clearly outlined the numerous repairs that would be necessary to both bring the building up to city code and make it safe.  The court noted the specific defects found in the roof, floor, rafters, and ceiling and in the electrical, plumbing, and heating and cooling systems.  The court cited incidents of youth and vagrants occasionally inhabiting the building and the potential danger to persons entering.  The court stated that the conservative cost of repair estimated by defendant's architect exceeded $42,000, which was approximately three times the market value of the property ($14,000).  Further, the court noted that everything in the building needed to be replaced except for the walls, doors, and windows and that the building could not be repaired without substantial reconstruction.  Although the court's written order may not have identified each particular defect rendering the building unsafe, we believe that the trial court's oral findings, along with the record and the testimony of the witnesses, amply illustrate the basis for its decision.  
Cf. Carroll
, 109 Ill. App. 3d at 162-63, 440 N.E.2d at 294-95.

Defendant, relying on 
Meyer
, argues that the court must find that the structure is beyond reasonable repair before it authorizes the demolition of the property.  Defendant contends that the court here only stated that the needed repairs would require substantial reconstruction of the building and that such language falls short of the required findings.  We disagree.  Defendant's argument is one of semantics.  Further, defendant's reliance on 
Meyer
 for the proposition that the court must invoke the exact language that a property is "beyond reasonable repair" is misplaced.  In interpreting section 11-31-1 of the Code, the court in 
Meyer
 opined, "[T]he statute, in providing for repair or demolition in the alternative, contemplates repair where feasible and 
demolition where 
the state of deterioration is such that repairs would amount to a 
substantial reconstruction
."  (Emphasis added.)  
Meyer
, 38 Ill. 2d at 136, 230 N.E.2d at 203.  We do not believe that courts are required to invoke the words "beyond reasonable repair" specifically and exclusively in order to conclude that a property is sufficiently defective and unsafe to warrant demolition.  

Defendant next argues that the court did not provide it with a reasonable opportunity to repair the property and that plaintiff prevented it from making repairs by not granting a permit to allow defendant's contractors to perform the repairs.  However, the testimony of Melody Kampmann, defendant's president, established that defendant knew that the building was in need of repair at the time it was purchased in 1997.  Further, defendant was provided with notice from plaintiff on April 14, 1999, that the repair or demolition of the building was being sought.  On April 24, 2000, the court ordered defendant to provide a construction estimate and remodeling plans to bring the building up to code, and it subsequently granted defendant a number of deadlines and extensions.  The matter was ultimately tried on March 29, 2001, at which time defendant was still in substantial noncompliance with the court's previous orders.  

In light of the foregoing, we find defendant's argument–that it was not afforded a reasonable opportunity to comply with the court's orders or to acquire a permit from plaintiff to repair the building–to be less than persuasive, at best.  We are unable to understand what more the court could have reasonably done to enable defendant to repair the building.  From the time plaintiff filed its complaint defendant had nearly two years to comply with procedures that would have enabled it to repair the building and avoid demolition.  We believe that the circuit court exhibited great patience responding to defendant's many motions to continue and unwillingness to comply with the court's orders.  We hold that the circuit court committed no error.   

Next, defendant argues that the circuit court erred in denying its March 5, 2001, motion for substitution of judge, which was made pursuant to section 2-1001 of the Code of Civil Procedure (735 ILCS 5/2-1001 (West 2000)).  Defendant contends that its motion, in part, was based on the fact that Judge Thomas Chapman had entered all of the orders in the case prior to February 26, 2001, and that his input into the meaning and interpretation of the language of the orders was crucial to the case.  Defendant notes that Judge Duff's February 26, 2001, order was the only one entered by her in the case prior to the filing of its motion to substitute and that the ruling did not go to the merits of the case because it was merely a ruling on a discovery issue.  

Defendant's contention–that its motion should have resulted in the reassignment of Judge Thomas Chapman–is completely baseless.  While a section 2-1001(a)(2) "substitution as of right" motion does not require a showing of cause, by definition, defendant's explanation that it was requesting a substitution partly so that Judge Thomas Chapman could be reassigned to the case belies the fact that litigants do not have the right to have a particular judge assigned to their case.  (Defendant's motion, if successful, could have very well resulted in the assignment of yet another judge.)  

We now turn to defendant's contention that rulings on discovery issues generally are not considered rulings on a substantial issue and do not go to the merits.  

Section 2-1001(a)(2) of the Code of Civil Procedure provides in pertinent part:

"(2) Substitution as of right. When a party timely exercises his or her right to a substitution without cause as provided in this paragraph (2).

(i) Each party shall be entitled to one substitution of judge without cause as a matter of right.

(ii) An application for substitution of judge as of right shall be made by motion and shall be granted if it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case[] or if it is presented by consent of the parties." 735 ILCS 5/2-1001(a)(2)(i), (a)(2)(ii) (West 2000).

A ruling is considered substantial when it is directly related to the merits of the case.  
Bonnie Owen Realty, Inc. v. Cincinnati Insurance Co.
, 283 Ill. App. 3d 812, 821, 670 N.E.2d 1182, 1188 (1996).  And even when the court has not yet ruled on a substantial issue, a motion for substitution of judge may be untimely if the moving party had an opportunity to test the waters and form an opinion of the court's reaction to his or her claim.  
In re Marriage of Petersen
, 319 Ill. App. 3d 325, 338, 744 N.E.2d 877, 887 (2001).  "A party is not free to 'judge shop' until he finds a jurist who is favorably disposed to his cause of action."  
In re Marriage of Petersen
, 319 Ill. App. 3d at 338, 744 N.E.2d at 887.

Defendant relies on 
In re Marriage of Birt
, 157 Ill. App. 3d 363, 510 N.E.2d 559 (1987), for its argument that a ruling on discovery issues does not go to the merits of the case and therefore cannot be a ruling on a substantial issue.  This court has held on a number of occasions that a trial court's ruling on a discovery motion is a ruling on a substantial issue when it pertains to evidentiary trial matters.  
Kochan v. Owens-Corning Fiberglass Corp.
, 242 Ill. App. 3d 781, 793, 610 N.E.2d 683, 691 (1993); 
Bonnie Owen Realty, Inc.
, 283 Ill. App. 3d at 822, 670 N.E.2d at 1189.  The instant case is more similar to 
Kochan
 and 
Bonnie Owen Realty, Inc.
 than 
In re Marriage of Birt
.

The February 26, 2001, hearing conducted by Judge Duff was held for the purpose of determining whether defendant had complied with the prior court orders.  Defendant's compliance with these orders would have ultimately allowed the court to determine whether defendant could reasonably make repairs and avoid the demolition of the building.  In the February 26, 2001, ruling, the judge was also called upon to determine which parts of the building were in substantial disrepair and what would be required to bring the building up to code.  Therefore, we find that the court's order of February 26, 2001, was a ruling on a substantial issue because it had a direct bearing on the merits of the case and also dealt with the specific evidence which would be required at the March 29, 2001, trial.  Furthermore, in light of Judge Duff's more serious approach to defendant's failure to comply with the court's many previous orders, it is reasonable to assume that defendant formed the opinion that Judge Duff did not hold a favorable view of its reasons for its noncompliance.  This testing of the waters by defendant further supports our conclusion that the motion to substitute was properly denied.  

As for defendant's argument that the court erred in denying its motion to extend and modify the February 26, 2001, order–which defendant claimed was unfair and prejudicial in requiring the posting of a $50,000 bond and the production of certain documentation–we decline to address this issue.  Defendant has cited no authority in support of these arguments, and any issue that has not been sufficiently or properly presented to this court for review is waived.  (
Pecora v. Szabo
, 109 Ill. App. 3d 824, 826, 441 N.E.2d 360, 361 (1982)).  A court of review is entitled to have the issues clearly defined with pertinent authority cited. 
Southwestern Illinois Development Authority v. Vollman
, 235 Ill. App. 3d 32, 38, 600 N.E.2d 926, 929-30 (1992).  The appellate court is not simply a depository in which an appealing party may dump the burden of argument and research.  
Pecora
, 109 Ill. App. 3d at 826, 441 N.E.2d at 361.

III.  CONCLUSION

We have carefully studied the facts in this case and conclude that the repairs necessary to make the building safe would require substantial reconstruction.  Our holding is strengthened by the circuit court's willingness to provide defendant with numerous opportunities to comply with its orders to avoid demolition and defendant's repeated failure to fully comply.  The circuit court's judgment authorizing demolition is not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

WELCH and HOPKINS, JJ., concur.

                                      NO. 5-01-0212

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

THE CITY OF GRANITE CITY, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Madison County.

)

v. )  No. 99-MR-296

)

HOUSE OF PRAYERS, INC., )

)

     Defendant-Appellant, )

)

and )

)

MERCANTILE BANK (nee American )

Heritage), JOHN KAMPMANN, )

MELODY KAMPMANN, WILLIAM E. )

CARPENTER, EVANGELIST )

ASSOCIATION, INC., and Unknown Owners, )

Heirs, Devisees, and Other Interested )

Parties, )  Honorable

)  Ellar Duff,

     Defendants. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: August 20, 2002

___________________________________________________________________________________

Justices
: Honorable Melissa A. Chapman, J.

Honorable Thomas M. Welch, J., and

Honorable Terrence J. Hopkins, J.,

Concur

___________________________________________________________________________________

Attorney
 Anthony R. Johnson

for
 Eagle Center One, Suite 3

Appellant
 O'Fallon, IL 62269

___________________________________________________________________________________

Attorney
 Mark P. Spengler

for
 2001 State Street

Appellee
 Granite City, IL 62040

___________________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 08/20/02.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.